06-3555

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

'06 SEP 20 P 1 :03

ALBERT PATTERSON d/b/a )
WORLD WRESTLING ASSOCIATION, )
SUPERSTARS OF WRESTLING, INC. and )
d/b/a W.W.A. SUPERSTARS )
                                  )
        Plaintiff                 )    No.  03 C 0374
                                  )
        v.                        )    JUDGE RANDA
                                  )
WORLD WRESTLING ENTERTAINMENT, INC )   JURY TRIAL DEMANDED
and GOOD HUMOR CORPORATION, d/b/a )
GOOD HUMOR BREYERS ICE CREAM      )
        Defendants                )

## NOTICE OF APPEAL

Notice is hereby given that Albert Patterson d/b/a WORLD WRESTLING

ASSOCIATION, SUPERSTARS OF WRESTLING, INC. and d/b/a W.W.A SUPERSTARS

Hereby appeals to the United States Court of Appeals for the Seventh Circuit from the final order

granting Defendant's motion for Summary Judgment in this action on  August 21, 2006 and

January 30, 2006.

Charles Drake Boutwell, Attorney for Plaintiff

Charles Drake Boutwell
3075 Plum Island Drive
Northbrook, Il 60062
847-272-2126

U.S.C.A. — 7th Circuit
F I L E D

SEP 2 5 2006   ER

GINO J. AGNELLO
CLERK

1

U.S.
EASTERN DISTRICT-WI
FILED

## CERTIFICATE OF SERVICE

I , Charles Drake Boutwell, hereby certify that I caused to by served a copy of  P 1 :04
PLAINTIFF'S NOTICE OF APPEAL
on counsel for defendants  Jerry S. McDevitt, Curtis Krasik and Julie R. Fernstermaker,
KIRKPATRICK & LOCKHART LLP, Henry W. Oliver Building, 535 Smithfield Street,
Pittsburgh, Pennsylvania 15222 via mail and Shepard A. Davis, BURTON & DAVIS. LLP, 611
N. Broadway, Milwaukee, WI 53202 counsel for the Defendants World Wrestling Entertainment,
Inc and Conopco, Inc.  53202 via mail on September 19, 2006.

Charles Drake Boutwell

2

# SEVENTH CIRCUIT APPEAL INFORMATION SHEET

## 06-3555

U.S.C.A. - 7th Circuit
R E C E I V E D
SEP 2 5 2006
GINO J. AGNELLO
CLERK

Include names of all plaintiffs (petitioners) and defendants (respondents) who are parties to the appeal.
Use separate sheet if needed.

District: **Eastern District of Wisconsin**

Docket No.: ( 03-C-374 )

Division: **Milwaukee**

| Plaintiff (Petitioner) | Short Caption | Defendant (Respondent) |
|---|---|---|
| (1) Albert Patterson d/b/a World Wrestling Assoc., Superstars of Wrestling, Inc. and d/b/a W.W.A. Superstars | v. (1) World Wrestling Entertainment, Inc. et al. | (1) World Wrestling Entertainment, Inc. et al. (2) Good Humor Corp. d/b/a Good Humor Breyers Ice Cream |

**Current Counsel for Plaintiff (Petitioner):** | **Current Counsel for Defendant (Respondent):**

(Use separate sheet for additional counsel)

| | | | |
|---|---|---|---|
| Name: | Charles Drake Boutwell | Name: | Shepard A. Davis |
| Firm: | | Firm: | Burton & Davis |
| Address: | 3075 Plum Island Drive | Address: | 611 N. Broadway, Ste. 335 |
| | Northbrook, IL 60062 | | Milwaukee, WI 53202 |
| Phone: | 847-272-2126 | Phone: | 414-224-8000 |

CONTINUED ON NEXT PAGE

Judge: Rudolph T. Randa

Court Reporter: Heidi J. Trapp

Nature of Suit Code: 3 840

Date Filed in District Court: 4/29/03

Date of Judgment: 8/21/06

Date of Notice of Appeal: 9/20/06

Counsel: ☐ Appointed   ☒ Retained   ☐ Pro Se

Fee Status: ☒ Paid   ☐ Due   ☐ IFP   ☐ IFP Pending   ☐ U.S.   ☐ Waived

(Please mark only 1 item above)

Has Docketing Statement been filed with the District Court's Clerk's Office: ☐ Yes   ☒ No

If 28 U.S.C. §2254 or 28 U.S.C. §2255, was certificate of appealability: ☐ granted; ☐ denied; ☐ pending

If certificate of appealability was granted or denied, what is the date of the order: _____

If Defendant is in Federal custody, please provide United States Marshal number (USM#): _____

**IMPORTANT: THIS FORM IS TO ACCOMPANY THE SHORT RECORD SENT TO THE CLERK OF THE U.S. COURT OF APPEALS PURSUANT TO CIRCUIT RULE 3(a).**

Seventh Circuit Appeal Information Sheet
Page Two
03-C-374


Additional Counsel for Defendant:

Curtis B. Krasik
Jerry S. McDevitt
Julie R. Fenstermaker
Kirkpatrick & Lockhart
Nicholson Graham LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA   15222-2312

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**ALBERT PATTERSON d/b/a**
**WORLD WRESTLING ASSOCIATION,**
**SUPERSTARS OF WRESTLING, INC.;**
**and d/b/a W.W.A. SUPERSTARS,**

**Plaintiff,**

vs.

**WORLD WRESTLING ENTERTAINMENT, INC.;**
**and GOOD HUMOR CORPORATION,**
**d/b/a GOOD HUMOR BREYERS ICE CREAM,**

**Defendants.**

**Case No. 03-C-0374**

**WORLD WRESTLING ENTERTAINMENT,**
**INC.,**

**Counterclaimant,**

vs.

**ALBERT PATTERSON d/b/a**
**WORLD WRESTLING ASSOCIATION,**
**SUPERSTARS OF WRESTLING, INC.;**
**and d/b/a W.W.A. SUPERSTARS,**

**Counter-defendant.**

### DECISION AND ORDER

## *NATURE OF THE CASE*

This is an unfair competition and trademark infringement action between competitors in the wrestling entertainment field. The plaintiff, Albert Patterson d/b/a World Wrestling Association, Superstars of Wrestling, Inc., and d/b/a W.W.A. Superstars ("Patterson"), claims that the Defendants World Wrestling Entertainment, Inc. ("WWE" or "the Defendant wrestling business") and Good Humor Corporation, d/b/a Good Humor Breyers Ice Cream ("Good Humor") (collectively "the Defendants") are infringing upon his marks – World Wrestling Association, WWA, Superstar Wrestling, Superstars Wrestling, Superstars of Wrestling, Superstars of Pro Wrestling, WWA Superstar Wrestling, WWA Superstars Wrestling, WWA Superstars of Wrestling, and WWA Superstars of Pro Wrestling. In a sense, this action is a re-match because of previous related trademark litigation in this district, *United Wrestling Association, Inc., d.b.a. U.W.A. Superstar Wrestling v. Titan Sports, Inc.*, Case No. 90-C-0991 (E. D. Wis.) ("the 1990 action"), that was terminated by consent decree.

### *Jurisdiction*

This Court has jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1121, and 28 U.S.C. § 1338(a). Supplemental jurisdiction over Patterson's state law claims is afforded by 28 U.S.C. § 1367. Venue lies in this district under 28 U.S.C. § 1391(b) & (c).

This decision addresses the motion for summary judgment filed by the Defendants seeking dismissal of all five claims[1] brought against them by Patterson.[2]

Before delving into the motion, the Court addresses a recent documentary submission. On January 10, 2006, Patterson filed additional documents as part of his response to the Defendants' motion which, he states, became available to him after his response to the Defendants' motion was filed. Patterson's response to the summary judgment motion was filed on June 5, 2005. Over six months have since passed and the briefing of the motion has long since closed. Patterson's new documents will not be considered at this eleventh hour. The Court's analysis of the parties' voluminous summary judgment submissions was well into its final stages when it received Patterson's filing. The Court will not prolong the process by considering these new submissions and the Defendants rejoinder thereto.

### *Standard for Summary Judgment*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[1]Count One is a unfair competition claim under 15 U.S.C. § 1125(a) and at common law. (Compl. ¶ XI.) Count Two (Federal Unfair Competition) is a false designation of origin claim under 15 U.S.C. § 1125(a). (Compl. ¶ XXXI.) Count Three states that the Defendants' unfair competition, as described in Count One (Compl. ¶¶ I-XXV), was a wilful violation of 15 U.S.C. § 1125(a). (Compl. ¶XXXV.) Count Four states that the Defendants misappropriated Patterson's unique methods of advertising claim. (Compl. ¶¶XXXVII & XL.) Count Five is a Wisconsin statutory claim of trademark infringement under Wis. Stat. § 132.01 *et seq.* (Compl. ¶XLVI.)

[2]The Defendants state that because of discovery problems their summary judgment motion does not address their counterclaims. Although the Defendants state they intend to file such a motion, the deadline for filing such dispositive motions has passed.

-3-

(1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A party "opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248; also citing *Celotex Corp.*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *United States v. Rode Corp.*, 996 F.2d 174, 178 (7th Cir. 1993)).

"Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant. In determining whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587.

Failure to respond to a summary judgment motion does not automatically result in judgment against the non-moving party. *See Cunningham*, 30 F.3d at 883. "A party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant." *Id.* (citations omitted).

-4-

## *Relevant Facts[3]*

These facts trace, to the extent not disputed, the history of Patterson's wrestling business and that of WWE. The facts are complicated and, at times, confusing because both wrestling businesses have been known by multiple names and have used multiple marks. The factual recitation is further complicated by a confidential agreement regarding the use of "WWF" as a trademark between the Defendant wrestling business and the WWF-World Wide Fund for Nature ("the Fund"). The Defendant wrestling business was found to have breached that agreement by the English Court of Appeals in *WWF - World Wide Fund for Nature (formerly World Wildlife Fund) and World Wildlife Fund Inc. v. World Wrestling Federation Entertainment*

---

[3]Unless accompanied by citation, the following facts are based on the Defendants' proposed findings of fact ("PFOF") and Patterson's statement of facts in opposition to the Defendants' motion for summary judgment, to the extent that both are undisputed. The Defendants did not file any response to Patterson's statement of facts in opposition to their summary judgment motion. Citations to all quoted material are provided even though such facts are undisputed.

Patterson responded to a number of the Defendants' proposed findings of fact stating that he "has no knowledge to admit or deny this fact." (*See* Pl.'s Resp. to Defs.' Proposed Findings of Fact in Supp. of Defs.' Mot. for Summ. J. ("Pl.'s Resp. to Defs.' PFOF") ¶¶ 61, 94.) Civil L.R. 56.2(b)(1) (E.D. Wis.) requires:

[a] specific response to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists. The response must refer to the contested finding by paragraph number and must include specific citations to evidentiary materials in the record which support the claim that a dispute exists.

Patterson's response to the Defendants' proposed findings of fact ¶¶ 61 and 94, is tantamount to an acknowledgment that the fact is undisputed.

Furthermore, Rule 56(e) of the Federal Rules of Civil Procedure provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Statements outside the affiant's personal knowledge or statements that are the result of speculation or merely conclusory do not meet this requirement. *See Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999)(citing *Box v. A & P Tea Co.*, 772 F.2d 1372, 1378 (7th Cir. 1985)). Hearsay evidence is also inadmissible. *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987). Where objected to by a party, the Court has excluded proposed findings of fact which do not meet the evidentiary standard of Rule 56(e). However, despite the Defendants' objection to Patterson's affidavit as self-serving, "a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed facts" provided that the evidence meets the usual requirements for evidence presented on summary judgment - including the requirements that it be based on personal knowledge and set forth specific facts showing that there is a genuine issue of material fact for trial. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003).

-5-

*Inc.*, [2004] EWCA Civ 1 196 (Eng.) ("English Court of Appeals' decision"), prompting certain changes by the Defendant wrestling business.

### Patterson and His Business Entities

In 1969, Patterson became involved in the wrestling entertainment business with Justi Fontaine ("Fontaine") in Milwaukee, Wisconsin ("Milwaukee"). In 1974, Fontaine died and Patterson took over the business. Patterson was the sole owner of the local wrestling promotion entity called United Wrestling Association, Inc., ("United Wrestling"), during the 1970's and early 1980's. United Wrestling promoted periodic wrestling shows at small venues in Milwaukee and surrounding towns under the names "United Wrestling Association," "U.W.A.," "Super Star Wrestling," and "Superstars of Wrestling."

Patterson also performed as a wrestler and first won the WWA ("World Wrestling Association") belt in December 1977. Patterson's first promotional use of the "WWA" and "World Wrestling Association" marks was in 1978.[4]  Specifically, Patterson first used those marks for purposes of promoting entertainment in the form a wrestling match on March 5, 1978, at the "Palace"[5] in Milwaukee. Approximately 500 people attended that event.

Eventually, United Wrestling declared bankruptcy and ceased all operations in about 1984. Patterson used a variety of other business entities in his wrestling entertainment business. King Kong Enterprises Inc. was incorporated on June 24, 1988. (Pl.'s Exs. in Opp'n

---

[4] For purposes of this litigation, Patterson does not claim promotional use of the marks "World Wrestling Association" or "WWA" until 1978.

[5] The parties have not provided any descriptive information about the "Palace." However, Exhibit 46 of the Plaintiff's Exhibits in Opposition to the Defendants' Motion for Summary Judgment, consisting of United Wrestling Association posters and advertisements of events Patterson produced from 1978 through 1989, includes a March 5, poster listing the Palace, 355 South 27th Street in Milwaukee as a venue. The year "1978" is handwritten on the poster.

-6-

to Defs.' Mot. for Summ. J. ("Pl.'s Exs."), Vol. V, Ex. 49.)   On July 19, 1989, King Kong Enterprises Inc. filed with the Wisconsin Secretary of State, a statement of adoption of the trade name "World Wrestling Association" "in any form, size, color, or style of lettering; as it pertains to the promotion of wrestling matches, ticket sales, goods and services" and a statement of adoption of the trade name "WWA Super Stars of Pro Wrestling" in any form, size, color, or size of lettering; as it pertains to promoting wrestling matches and promoting ticket sales." (*Id.*)

Beginning in 1989, at wrestling event promoted by Patterson caps were sold bearing the mark "World Wrestling Assoc. ™' W.W.A. Superstars'™." After 1989 and up to the present, T-shirts sold at similar events bore the mark "World Wrestling Association Superstars of Wrestling." Generally, these caps and T-shirts were sold at live events organized by Patterson's business entities.

The early rumblings of a conflict could be heard even back then. In August 1989, Patterson's attorney sent letters to Vincent McMahon ("V. McMahon")[6] and Gold Bond Ice Cream, Inc., (a predecessor-in-interest to Good Humor) demanding that they stop using the trademarks, "Superstars of Wrestling," "Superstars of Pro Wrestling," and "Superstar Wrestling." These letters, dated August 2, and August 11, 1989, do not claim any rights to "World Wrestling Association" and "WWA" or demand that V. McMahon or Gold Bond Ice Cream stop using "World Wrestling Federation" and "WWF," although Patterson knew that the Defendant wrestling business as doing business under those marks at that time.

---

[6]V. McMahon is the chairman of the Defendant wrestling business. The business was founded by his father in 1963. At its founding, the entity was known as World Wide Wresting Federation ("WWWF"). At some point, Capital Wrestling Corporation ("Capital Wrestling") operated WWWF. Another business entity, Titan Sports, Inc., ("Titan") also operated WWWF and its successors.

In a letter dated December 27, 1989, to V. McMahon, Patterson offered to sell to Titan, an entity which operated WWWF and its successors, his tradenames identified as "1. Super Star Wrestling" and "2. Super Stars of Wrestling." (Defs.' App. in Supp. of Mot. for Summ. J. ("Defs.' App."), Ex. 3 (Patterson Dep. Nov. 22-23, 2004) 282, Ex. 26.)

On June 6, 1991, United Wrestling was merged into World Wrestling Assoc. (W.W.A.) Inc. (Pl.'s Exs., Ex. 50.) After the merger, the WWA mark was used in a 1991 press conference, by announcer Harold A. Naboisek ("Naboisek") (using the business name David Starr) who introduced the wrestler Gargantua,[7] as a new "WWA" wrestler. "WWA" was also used in the 1992 African World Festival[8] live wrestling event.

From 1993 to the present, Patterson's business entities continued to use, and to be known by, names other than the World Wrestling Association or the WWA. Between 1992 and 1993, Patterson aired UWA wrestling matches from the 1980's, on certain local access cable channels in Wisconsin, under the program title "Superstars of Wrestling." A June 12, 1996, letter from the African World Festival identifies Patterson's company as "Superstars of Wrestling."

Patterson has not made a profit from his wrestling business endeavors since 1979. The federal tax return filed for WWA/Superstar Wrestling, Inc., in 1993, reported a net loss of approximately $29,500. Personally, Patterson has not filed a personal income tax return for over 20 years.

---

[7]The Court suspects his tag-team was Pentagruel!

[8]The African World Festival, held on Milwaukee summer festival grounds, is referred to by several names in the parties' proposed findings of fact. To avoid confusion, the Court refers to the festival as the "African World Festival."

Patterson purchased all of the assets of United Wrestling on December 7, 1992, for $9,500. Verified records from the Wisconsin Department of Financial Institutions demonstrate that WWA/Superstar Wrestling, Inc., Patterson's wholly-owned corporation, which he claimed owned the marks, was administratively dissolved on November 4, 1994.

Patterson's September 3, 2004, Supplemental Responses to Interrogatory No. 5 of the Defendants' First Set of Interrogatories contains a list of 40 wrestling shows from 1978 to 2003 that were promoted as "World Wrestling Association" and "WWA" shows. The list was compiled from Patterson's memory. On March 8, 2005, Patterson served a Supplemental Response to the Defendants' First Set of Interrogatories that added a June 19, 2001, show, to Patterson's "Schedule of Use of WWA Wrestling, Inc."

During his November 22, 2004, deposition, Patterson was questioned with the promotional materials for pre-1993 shows listed on his "Schedule of Use of WWA Wrestling, Inc.," that do not in any way reference "World Wrestling Association" or "WWA." Initially, Patterson maintained that they were "World Wrestling Association" and "WWA" shows based on other unidentified evidence. However, eventually Patterson conceded that he did not promote any wrestling shows using "World Wrestling Association" or "WWA" until years later than his alleged 1978 first use.

During his November 23, 2004, deposition, Patterson stated that he did not offer to sell the marks "World Wrestling Association" and "WWA" to V. McMahon because "I did not think I had exclusive rights to World Wrestling Association at that time." (Defs.' App., Ex. 3, 287.) Also, during Patterson's November 22, 2004, deposition, he stated that, at the conclusion

of the 1990 Action, he understood that he required "a consent statement" and "a release" from World Wrestling Federation or WWF to use "World Wrestling Association" as the name of his business.

### *WWE*

WWE, a publicly traded corporation on the New York Stock Exchange, is an integrated media and entertainment company principally engaged in the development, promotion and marketing of television programming, pay-per-view programming, and live arena events, and the licensing and sale of branded consumer products featuring its "World Wrestling Entertainment" brand of entertainment. WWE has developed into an international media conglomerate that is a leading provider of family entertainment.

Currently, WWE produces and distributes seven weekly television programs that reach over ten million households each week. WWE is the largest provider of pay-per-view revenue in the world with 5.6 million purchases of WWE's 12 pay-per-view events in 2004. WWE's Wrestlemania XX pay-per-view event in March 2004 grossed the highest pay-per-view revenue ever recorded. WWE promotes over 300 live events annually, which are attended by over 1.64 million people. WWE's nationally circulated magazines sold over 4.3 million copies in 2004.

The mark "WWE" is a highly popular licensed property. "WWE"-branded video games sold over four million units[9] in 2004 and "WWE"-branded books have sold over five million gross units to date with 13 titles appearing on the *New York Times* Best Seller List,

---

[9]"Unit" is not defined in the Defendants' proposed findings of fact. A definition of "unit" is "single thing." *See* http://dictionary.ocd.com (type "item" in "find word" box and click enter.)

including three number one best seller books and one best seller at number two. "WWE" home videotapes sold over 1.8 million units in 2003 and released 27 new titles. Other "WWE"-branded merchandise is sold through national retailers such as Wal-Mart, Target and Toys R Us, as well as directly through "WWE's" website, catalog and at live events. WWE's website, www.wwe.com, receives 6.8 million visits per month with more than eight million video streams downloaded monthly.

<div align="center">

*Good Humor*

</div>

Good Humor is WWE's licensee.[10]

<div align="center">

*Prior Litigation Between Patterson & Titan*

</div>

The 1990 action, Patterson's first trademark infringement lawsuit against Titan, WWE's predecessor-in-interest, was resolved by a November 25, 1992, settlement entered as a written Consent Order ("the Consent Order") by United States District Judge Thomas J. Curran on January 22, 1993. The Consent Order precludes WWE from using the names "Superstars of Wrestling,"[11] "Superstar Wrestling," and "Superstars of Pro Wrestling" in conjunction with wrestling activities. The Consent Order expressly states: "This judgment does not preclude any party from using the term 'Superstars.'" (Defs.' App., Ex. 8 (Consent Order) 2.) The action was dismissed with prejudice. (*Id.*)

---

[10]Patterson admits there is an agreement between Good Humor and WWE. (Pl.'s Resp. to Defs.' PFOF ¶ 76.) However, Patterson denies that WWE owns the marks it purports to license and therefore asserts that Good Humor cannot be a licensee. (*Id.*) Patterson maintains that WWE was merely a licensee of "WWF" from the Fund which owned that mark and all of its progeny. (*Id.*) Patterson's arguments with respect to the contractual agreement between the Fund and WWE are questions of law for the Court. However, the proper legal characterization of that agreement is not germane to the issues raised by the Defendants' motion for summary judgment and therefore will not be analyzed in this decision.

[11]An amended judgment in the 1990 action entered on December 7, 1993, changed the term from "Superstar of Wrestling" to "Superstars of Wrestling."

Shortly after entry of the Consent Order, Patterson brought an order to show cause why Titan should not be held in civil contempt for allegedly violating the injunction.[12]   He claimed, among other things, that the Defendant wrestling business's use of "WWF's Superstars" violated the Consent Order. During the November 17, 1993, hearing on the motion, Patterson told the court that he had been operating under "WWA Superstars since 1989." (Defs.' App., Ex. 23 (Nov. 17, 1993, Order to Show Cause Hearing in the 1990 action, Tr. 9).) Judge Curran stated "there's no evidence of that." (*Id.*) In denying the contempt motion, Judge Curran stated:

> As to the issue of whether the defendant's use of a confusingly similar mark has been a violation, the court would have been sympathetic toward this position would it not have been for the fact that the Secretary of State's office shows that the plaintiff after this injunction was entered sought to change the name of King Kong Enterprises to Superstars of Wrestling, WWA Superstars, Inc.
>
> Certainly in the court's mind that is confusing and is likely to confuse the public. . . . just by reading this, "WWA Superstars Inc." is so close to "WWF Superstars" that I can't conceive of any reason for that change other than to piggyback the benefits that might flow from the identity of **WWF which changed its name previously pursuant to the injunctive relief sought and received in this court**.

(Defs.' App., Ex. 23, Tr. 37-38 (emphasis added).)

As of her January 16, 1992, deposition, L. McMahon[13] did not claim ownership of any entity named "Worldwide Wrestling." From 1980 to 1982, Titan used the trade name or logo

---

[12]Paragraph 79 of the Defendants' proposed findings of fact, which is not disputed, incorrectly refers to the motion as a motion for sanctions. This characterization is contrary to the transcript of the proceedings and the docket of the 1990 action.

[13]L. McMahon is V. McMahon's wife. The deposition of L. McMahon was taken in the 1990 action. She testified at that deposition she was Titan's Executive Vice President and a member of its board of directors. (Pl.'s Exs., Vol. 1, Ex. 4 (L. McMahon Dep. Jan. 16, 1992) 10.)

"Worldwide Wrestling Federation."[14] but she did claim ownership of "World Wrestling Federation." In her sworn declaration to the United States Patent and Trademark Office ("PTO"), filed on June 3, 1983, in connection with Serial No: 73/428666, L. McMahon declared that the first use of the service mark, "World Wrestling Federation," was in February of 1983. Although Patterson claims that he began using the marks "World Wrestling Association" and "WWA" in 1978, he did not allege in the 1990 action that "World Wrestling Federation" or "WWF" infringed his "World Wrestling Association" or "WWA" marks.

*WWE's Predecessors*

The World Wide Wrestling Federation ("WWWF") was the name of the wrestling organization founded by V. McMahon's father in 1963. V. McMahon and L. McMahon believed that these names were cumbersome – that there were too many words in the original name and were difficult to repeat. Therefore, the organization's name was changed to "World Wrestling Federation" or "WWF,"[15]

Titan bought a company called Capitol Wrestling in June of 1982. From 1980 to 1982, Titan's principal activity from 1980 through 1982 was as a promotion company. Titan used the talent of Capitol Wrestling which operated under the name of "WWWF."

In 1984 or 1985, Patterson watched "WWF Superstars of Wrestling" *WrestleMania*

---

[14]From 1980 to 1982, Titan used the trade name or logo "Worldwide Wrestling Federation."

[15]There is a factual dispute regarding the year that Titan began to use the names "World Wrestling Federation" and "WWF." (*Compare*, Defs.' PFOF ¶ 33 with Pl's Resp. to Defs.' PFOF ¶ 33.) There is also a factual dispute regarding the exact year that Titan began using the "stacked" "WWF" logo and the exact year that it began using the "scratch logo." Examples of the "stacked" and "scratch" logos are in the factual materials submitted in support of the Defendants' proposed findings of fact and are appended to this decision.

I in which the "World Wrestling Federation" and "WWF" marks were featured prominently. (Defs.' App. Ex. 3, 225:19-226:15, Ex. 12 (WrestleMania I-X8).)[16] On January 1, 1996, Patterson sent the Defendant wrestling business a complaint alleging trademark infringement that was virtually identical to the complaint in this action. Patterson did not file that particular complaint in any court.

On January 12, 1988, WWF – the former WWWF- changed its name to Titan.[17] More changes were coming. On July 29, 1999, Titan changed its name to "World Wrestling Federation Entertainment, Inc." And finally, fFollowing the English Court of Appeals' decision, "World Wrestling Federation Entertainment, Inc." changed its name to "World Wrestling Entertainment, Inc."on June 12, 2002.

*Fund*

The Fund began using the mark "WWF" in 1961. The mark "WWF" has been owned by the Fund under Serial Number 72223194 and Registration Number 81716 since at least 1965, when it was registered. The Fund filed for registration of "WWF" on May 8, 1981, and the mark was registered under number 733090997.[18] The mark under registration number 1305671 is owned by the Fund with respect to "IC 028, US 022; IC 025 US 039; IC 024 US 042;

---

[16]*WrestleMania I* took place at Madison Square Garden in New York City, New York, on March 31, 1985. (Defs.' App., Ex. 12.) However, the identifying sticker on *WrestleMania I* videotape jacket and the videotape cassette bear a 1998 Titan copyright mark. (*Id*.) The introductory portion of the videotape contains promotional material for *WrestleMania* events I through XIII. (*Id*.) *WrestleMania XIII* took place on March 23, 1997. (*Id*.) The "'WWF' scratch logo" appears on the videotape. (*Id*.)

[17]This fact seemingly conflicts with the undisputed fact that Titan was a promotion company from 1980 to 1982. Specifically, Titan operated a business, but that entity was not named "Titan" until at least six years later. However, the conflict is not material and both facts are undisputed.

[18]This fact seemingly conflicts with the preceding fact. However, the preceding fact is based on paragraph 2 of Patterson's statement of facts in opposition to Defendants' motion for summary judgment and the instant fact is based on paragraph 3 of such facts.

-14-

IC 020 US 050; IC 018 US 003; IC 016 US 022 037 038; IC 014 US 027, 28; IC 009 US 036; and IC 008 US 023." (Pl.'s Statement of Facts in Opp'n to Defs.' Mot. to Summ. J. ("Pl.'s Statement of Facts") ¶ 4.)

On January 20, 1994, the Fund and Titan entered into an agreement pursuant to which Titan received limited permission to use the mark "WWF." The agreement provided that neither party would disclose the terms or existence of the agreement. (Pl.'s Exs., Vol. I, Ex. 1 at 12 (Art. 7).)[19] The January 20, 1994, agreement was preceded by a September 12, 1989, letter agreement between Titan and the Fund's predecessor, World Wildlife Fund. (Pl.'s Exs., Vol. I, Ex. 1, Art. 5 & Annex 3.) In that letter, Titan agreed not to use the mark "WWF" in "Times Roman" typeface if the World Wildlife Fund, in return, would not oppose Titan's federal trademark registration of "WWF" in "Class 41, Serial No. 770,628." (*Id.*)

*Trademark Proceedings in the United States - "WWF" Superstars*

Titan (d/b/a The "World Wrestling Federation" Corporation) filed an application with the PTO for registration of the mark "WWF Superstars" on May 26, 1992, claiming a date of first use of April 18, 1992. The mark "WWF Superstars" filed May 26, 1992, did not have a

---

[19]Paragraph 18 of Patterson's statement of facts in opposition to the defendants' motion for summary judgment refers to the agreement as a "licensing agreement." However, the document is titled "Agreement." (Pl.'s Exs., Ex. 1, 1.) The Defendants did not respond to Patterson's statement of facts, but at page two of their summary judgment reply brief, they state that the agreement is not a license agreement. An unsworn statement in a brief does not meet the requirements of Fed. R. Civ. P. 56(e) and, therefore, does not create a genuine issue of material fact.

However, the Court is not bound by Patterson's conclusory characterization of the agreement as a licensing agreement. Discerning the nature of the contract between the Defendant wrestling business and the Fund is a question of law for the Court.

disclaimer;[17] Titan's application did not disclose its written agreement regarding the "WWF" mark with the Fund.

In 1995, Superstars of Wrestling (WWA Superstars) Inc., a Wisconsin corporation, and Patterson instituted cancellation proceedings before the PTO Trademark and Trial Appeals Board ("TTAB") with respect to the "WWF Superstars" mark. (Defs.' App., Ex. 31, 1.) Titan filed a motion for sanctions.

In its decision on the petition to cancel and motion for sanctions, mailed on August 12, 1999, the TTAB amended the case caption, identifying only one corporate "plaintiff," Superstars of Wrestling (WWA Superstars) Inc. (*Id.* 1-2.) Because the Superstars of Wrestling (WWA Superstars) Inc. failed to respond to Titan's motion for sanctions, the TTAB granted the motion for sanctions by denying the petition to cancel as a sanction. (*Id.* 6.) The TTAB also dismissed the petition to cancel on the alternative basis that, as a matter of law, Superstars of Wrestling (WWA Superstars) Inc. was not entitled to relief because there was "no likelihood of confusion among consumers because of the contemporaneous use and registration of the parties' respective marks." (*Id.* 9.)

In its discussion of the petition to cancel, the TTAB stated that Superstars of Wrestling (WWA Superstars) Inc. could suffer no real damages from Titan's registration of the mark "WWF Superstars." (*Id.*) The TTAB noted that Judge Curran had found each party to the 1990 action was entitled to use "Superstars." (*Id.*) The TTAB stated that Titan's coupling of the acronym "WWF" with "Superstars," and registration of the resultant composite with its

[17]Section 1056(a) of Title 15 of the United States Code provides: "The Director may require the applicant to disclaim an unregistrable component of a mark otherwise registrable. An applicant may voluntarily disclaim a component of a mark sought to be registered." 15 U.S.C. § 1056(a)(2000).

disclaimer of "Superstars" could not be the source of damage to Superstars of Wrestling (WWA Superstars) Inc. (*Id.*) The TTAB made such determination citing the corporate plaintiff's pleaded marks – "Superstars of Wrestling" with a star design framed by the letters "S" and "W," "Superstars of Wrestling," "Superstar Wrestling," and "Superstars of Pro Wrestling." (*Id.*)

Titan's PTO application for "WWF Superstars" under IC 41 with respect to entertainment services, namely television wrestling programs featuring wrestling exhibitions and live performances by professional wrestlers/entertainers[18] under registration number 1819240, was ultimately cancelled by Lynne G. Beresford, Deputy Commissioner for Trademark Examination Policy.[19] (Pl.'s Exs., Vol. I, Ex. 12.)[20] This cancellation followed Titan's surrender of registration number 1819240 for cancellation and the Deputy Commissioner's finding that (1) the petitioner (Titan)[21] was the owner of the registration and had complied with the requirements

---

[18]Titan's application originally sought registration of "WWF Superstars" for "entertainment services, namely television programs featuring wrestling exhibitions **and other related entertainment** and the live performances by professional wrestlers/entertainers." (Pl.'s Exs., Vol. I , Ex. 11 at 74/278657(emphasis added).)

[19] Section 7(e) of the Trademark Act of 1946, 15 U.S.C. § 1057(e) states:

Upon application of the registrant the Director may permit any registration to be surrendered for cancellation, and upon cancellation appropriate entry shall be made in the records of the Patent and Trademark Office. Upon application of the registrant and payment of the prescribed fee, the Director for good cause may permit any registration to be amended or to be disclaimed in part: *Provided*, That the amendment or disclaimer does not alter materially the character of the mark. Appropriate entry shall be made in the records of the Patent and Trademark Office and upon the certificate of registration or, if said certificate is lost or destroyed, upon a certified copy thereof.

15 U.S.C. § 1057(e) (2000).

[20]Patterson has presented proposed findings of fact with respect to the cancellation of the "WWF Superstars" trademark. (Patterson's Statement of Facts ¶¶ 19 & 19.) (Two consecutive factual statements in Patterson's Statement of Facts are numbered "19.") However, the parties disagree on the reason for the cancellation. The Court's statement is based on the Deputy Commissioner's determination. (Pl.'s Exs., Vol. I, Ex.12.)

[21]In Patterson's Statement of Facts, he maintains that the trademark was cancelled upon his petition. (Patterson's Statement of Facts ¶ 19 (2nd).) However, Patterson is not referenced in the Deputy Commissioner's December 31, 2002, cancellation letter. (Pl.'s Exs., Vol. I. Ex. 12.) He was also not the owner of Trademark Registration No. 1819240. Furthermore, the Superstars of Wrestling (WWA Superstars) Inc.'s cancellation petition was dismissed on August 12, 1999. (Pl.'s Exs., Ex. 12 (http://tarr.uspto.gov/servlet/tarr?regser=serial&entry=74278657).)

-17-

of Section 7(e) of the Trademark Act of 1946; and (2) that the Examiner of Trademarks had

recommended the cancellation of the registration. (*Id.*)

*Impact of Trademark Proceedings in England*

The Court of Appeals' decision in *WWF - World Wide Fund for Nature (formerly*

*World Wildlife Fund)*, [2004] EWCA Civ 1 196,(Eng.), led to changes by the Defendant wrestling

business. In May 2002, WWF changed its brand name to "World Wrestling Entertainment" and

"WWE."[22] Those names currently are the Defendant wrestling business's principal brand

identifiers for all aspects of its business. On November 7, 2002, the Defendant wrestling business

also voluntarily withdrew its application with the PTO for the "'WWF' scratch logo."

In WWE's Annual Report for the fiscal year ending on April 30, 2002, pursuant

to Section 13 or 15(d) of the Securities Exchange Act of 1934 ("Form 10-K Report") filed with

the United States Securities and Exchange Commission ("SEC"), WWE states:

> World Wrestling Entertainment, Inc., formerly known as World
> Wrestling Federation Entertainment, Inc., was incorporated in
> Delaware in 1987, and in 1988 we merged with our predecessor
> company, which had existed since 1980. In October 1999, we sold
> 11,500,000 shares of Class A common stock to the public at an
> initial offering price of $17.00.

(Pl.'s Exs., Vol. II, Ex. 14 (Certified copy of PTO document relating to Trademark Application

78/119,535),[23] Form 10-K Report, Pt. I, Item 1, 1.) In the Form 10-K Report, World Wrestling

Entertainment described the litigation in England, stating:

---

[22] WWE has never used the marks "World Wrestling Association" or "WWA."

[23] This statement is based on paragraph 20 of Patterson's statement of facts. Patterson incorrectly attributes the quoted material to the 2002 annual report of World Wrestling Entertainment, Inc.

In April 2000, the WWF-World Wide Fund for Nature (the "Fund") instituted legal proceedings against us in the English High Court seeking injunctive relief and unspecified damages for alleged breaches of an agreement between the Fund and us. The Fund alleges that our use of the initials "WWF" in various contexts including . . . (ii) our "scratch" logo violate the terms of the agreement between the Fund and us. In January 2001, the Fund filed for summary judgment on its claims. On August 10, 2001 the trial judge granted the Fund's motion for summary judgment, holding that we breached the parties' 1994 agreement by using the 'wwf' website addresses and scratch logo and that a trial is not warranted on these issues. On October 1, 2001, the judge issued a form of written injunction barring most uses of the initials "WWF", including in connection with the 'wwf' website addresses and the use of the scratch logo, by us and our licensees. On February 27, 2002, the Court of Appeal affirmed the trial judge's decision and dismissed our appeal; and on June 10, 2002, the House of Lords declined to hear our appeal. We have five months from the date of the House of Lords' decision to comply with the injunction. We intend to comply with the injunction and to seek modification of the injunction where it is impractical or impossible to comply. Prior to the House of Lords' decision, we took steps to change our name to "World Wrestling Entertainment, Inc." and to revise our logo and switch our initials to "WWE". These changes have been incorporated into our television and pay-per-view shows, promotional materials used by us and our various distributors, affiliates and licensees, advertising campaigns as well as our corporate stationary and facilities and statutory filings with state and federal agencies. However, certain other aspects of the injunction as issued may be impracticable or difficult to comply with, and unless modified or clarified, may adversely affect the use or repackaging of our historical video library containing our former logo and verbal references to "WWF" and our licensing program that uses our former logo on a variety of retail products, including toys and video games. The Fund also has pending before the trial court a damages claim associated with our use of the initials "WWF."

(Pl.'s Exs., Vol. II, Ex. 14, Form 10-K Report, Pt. I, Item 3, 10.)[24]

---

[24]This statement is based on paragraph 20 of Patterson's statement of facts. Patterson incorrectly attributes the quoted material to WWE's 2002 annual report.

*WWE and its Recent Activities*

WWE's experience is that wrestling fans are highly knowledgeable and loyal with respect to professional wrestling programming and merchandise. WWE merchandise is designed to promote the development of WWE characters and storylines.

The announcement of World Wrestling Federation's or WWF's name change in a May 6, 2002, press release, was accompanied by an extensive marketing or "rebranding"campaign to educate consumers that the goods and services they expected would continue to be provided under "World Wrestling Entertainment" and "WWE." The rebranding campaign unveiled a new "scratch logo" (comprised of the letters "WW") as WWE's' principal brand identifier, which is stylistically the same as its old "scratch logo" (comprised of the letters "WWF"), except for the removal of the letter "F." The rebranding campaign emphasized the continuation of the desirable qualities of the "WWF" brand, specifically its image of "attitude."

As WWF's May 6, 2002, press release explained, while "World Wrestling Entertainment" and "WWE" were intended to emphasize certain diversification of entertainment properties, WWE's business activities, including in particular its core sports entertainment television programming and live events, remained unaltered and the principal focus of the company.

Based on the modification of the "scratch logo," and the emphasis on the brand's continuing "attitude," the rebranding campaign adopted the slogan "Get the 'F' Out," which was the centerpiece of a multi-million dollar advertising initiative through television, print, radio and Internet media. "WWE's" television programming, live events and merchandise are promoted

-20-

with state-of-the-art graphics, designs, and visual presentation. "Substantially all" of WWE's goods and services are uniformly branded with WWE's scratch logo. (Defs.' PFOF ¶ 90.) The "scratch logo" appears in the bottom right corner of all WWE television programming and home video products. For merchandise, the "scratch logo" is depicted either as a part of the design on the merchandise itself or on the "hangtag."[25] (Defs.' App., Ex.1 (L. McMahon Aff.), ¶ 25, Ex. C.) The words "World Wrestling Entertainment" also appear with the "WW" "scratch logo" on some products postdating May 2002. (Defs.' App., Ex. 16 (Dec. 2002 & Oct. 2003 Covers of *Raw Magazine*); Ex. 17 (Videotape jacket and cassettes of *WrestleMania XIX* and *WrestleMania XX*).)

Since May 2002, when WWF adopted the marks "World Wrestling Entertainment" and "WWE," it has promoted seven live events in Milwaukee at the Bradley Center (in addition to prominently offering goods and services in Milwaukee through its weekly programing, monthly pay-per-view events, and sale of branded merchandise).

### *Patterson's Recent Activities*

Since May 2002, Patterson held two shows at the United Community Center, 1028 South 9th Street in Milwaukee. Patterson has produced evidence in this litigation of eight wrestling shows[26] that used the marks "World Wrestling Association" and "WWA": (1) a wrestling performance at African World Festival in Milwaukee from August 6 through August

---

[25]A "hangtag" is "a tag attached to a piece of merchandise giving information about its composition and proper care and use." *See* http://www.yourdictionary.com (type "hangtag" in "search" box and click "go").

[26]The parties disagree regarding the **number of shows** which, in any way, used the marks "World Wrestling Association" or "WWA." The Defendants assert that Patterson has produced evidence of only eight shows.

-21-

7, 1993, with a banner emblazoned with "WWA Superstars of Wrestling" and Patterson wearing a "WWA" T-shirt; (2) footage from "WWA" Wrestle Mayhem II on May 7, 1993, that "evidences certain use of 'WWA.'" (3) footage from "WWA" Detroit Raw on August 8, 1993, that "evidences certain use of 'WWA'" – Patterson claims such footage was later replayed on a satellite pay-per-view channel; (4) footage of a live wrestling performance on February 12, 1993, at the Waukesha Expo Center, in Waukesha County, Wisconsin with "a single use of 'World Wrestling Association.'"[27] The show was taped for rebroadcast. Patterson claims such footage was later replayed on a local access cable channel; (5) footage of a wrestling performance at the MECCA[28] on April 8, 1993, with the name "WWA Superstars of Wrestling" on a banner; (6) undated footage from another wrestling performance that shows a banner with the name "World Wrestling Association WWA Superstar;" (7) a wrestling performance at the United Community Center in Milwaukee on June 23, 2002, that "advertises certain uses of World Wrestling Association and WWA"; and (8) a wrestling performance at the United Community Center on June 7, 2003, that "advertise[d] certain uses of World Wrestling Association and WWA." (Defs.' PFOF ¶ 66.) Among the foregoing eight uses, Patterson inconsistently used different names including "WWA Superstars of Wrestling," "World Wrestling Association WWA Superstars" and "World Wrestling Association Superstars of Wrestling."

---

[27]Patterson estimates that 300-400 people attended the event. (Defs.' App., Ex. 3 at 312.)

[28]The MECCA Arena ("Arena") (currently known as the U.S. Cellular Arena, also formerly known as The Milwaukee Arena and Wisconsin Center Arena), an indoor arena located in Milwaukee, was completed in 1950. The Arena sat 12,200 for basketball and was the home of the NBA Milwaukee Bucks from 1968 through 1988. It also hosted the men's basketball team of Marquette University and the International Hockey League Milwaukee Admirals. All three teams moved to the Bradley Center in 1988. Since 1998, when the Arena underwent a major renovation, it has been home to the Milwaukee Wave of the Major Indoor Soccer League and University of Wisconsin-Milwaukee Panthers' men's college basketball. *See* http://wikipedia.org (in search box, type "U.S. Cellular Arena," click "go").

A May 19,1992, press release states that "Albert Patterson, President of the World Wrestling Association, announced today that Superstars of Wrestling will return to the airwaves on Saturday, June 6, 1992, at 8:30 a.m. (Pl.'s Exs., Vol. V, Ex. 53.)[29] In August 1992, Patterson presented a "WWA" wrestling event at the African World Festival. (Defs.' App., Ex. 3 at 349-54.) Patterson presented "WWA" wrestling shows at the African World Festival, an annual event, in August 1993, 1994, 1995, 1996, 1997, and 1998, with an estimated annual attendance of 1,500 persons based on the seating capacity of the venue. (Defs.' App., Ex. 3 at 349-54.)[30] Patterson advertised a *WrestleMayhem II* show at the MECCA for May 1, 1993, using "World Wrestling Association" and "WWA Superstars of Wrestling." (Pl.'s Exs. Vol. V, Ex. 57.) At the "Jublilee Festival 93'," in Detroit, Michigan, Patterson also presented the "WWA Superstars of Wrestling" show on August 7 and August 8, 1993. (Pl.'s Exs., Vol. V, Ex. 60.) The event was taped for cable and aired on Labor Day. (*Id.*)

Patterson also presented a show at the Eagles Club, 2401 Wisconsin Avenue, Milwaukee, Wisconsin on September 17, 1995, featuring the marks "World Wrestling Association" and "WWA Super Stars." (Pl.'s Exs., Vol. V, Ex. 63.) At the same venue on December 3, 1995, Patterson presented a show using the marks "World Wrestling Assoc." and "WWA Super Star Wrestling." (Pl.'s Exs., Vol. V, Ex. 64.) At the Rave, which is at the same physical location as the Eagles Club, Patterson also presented a wrestling show by the W.W.A. Superstars Inc., on August 3, 1997. (Pl.'s Exs., Ex. 78.) On September 13, 1998, Patterson

[29]This fact is based on Patterson's Statement of Facts ¶ 97. However, that statement references a series of press releases, but the cited exhibit contains only one press release dated May 19, 1992.

[30]This statement is based on Patterson's Statement of Facts ¶ 93.

-23-

presented a wrestling show at the Eagles Club using the marks "World Wrestling Assoc." and "W.W.A. Superstar." (*See* Pl.'s Exs., Vol. V, Ex. 66 & Defs.' App., Ex. 3 at 374-75.) The show was videotaped. (*Id.*)

On June 19, 1999, and again on June 19, 2000, Patterson presented a "WWA Superstars of Wrestling"event with approximately 2,500 people in attendance at each event. On June 19, 2003, Patterson presented a "WWA Superstars of Wrestling" show at the Martin Luther King Center on Martin Luther King Drive in Milwaukee. Free T-shirts bearing the marks "Superstars of Wrestling" "WWA Superstars" were given out by one of the event's sponsors, Reed Furniture.

In June 2000, "World Wrestling Association Superstars of Wrestling, Inc.," performed an event at the Puerto Rican Fair. After that, "World Wrestling Association Superstars of Wrestling, Inc.," performed annually at the Puerto Rican Fair through 2003, when that fair was cancelled.

In 1999 and 2000, the "World Wrestling Association Superstars of Wrestling" did four co-performances with Rampage Wrestling. Wrestler Jeff May ("May") entertained at some of the shows. The banner on the ring read: "WWA Superstars of Wrestling." (*Id.* at 365-66.)

Under a license agreement between Patterson and Resort Live, Inc., a wrestling show took place in Sydney, Australia featuring Dennis Rodman[31] ("Rodman"), using the marks

---

[31]Rodman, nicknamed "The Worm," has been described as:

[an] eccentric, abrasive basketball player, born in Trenton, New Jersey, USA. He started his professional career with the Detroit Pistons, winning two championships (1989–90) with them before joining the Chicago Bulls, winning consecutive championships in 1996–8. He led the NBA (National Basketball Association) in rebounding for seven consecutive seasons (1992–8). He signed for the LA (Los Angeles) Lakers in 1998, but was waived by the club after less than three months.

"World Wrestling Association," "WWA," and "Superstars of Wrestling." The show was videotaped. A licensing acknowledgment by Resort Live at the end of the videotape version of the program reads:

> Superstars of Wrestling is a trademark of Albert P. Patterson D/B/A WWA Superstars of Wrestling in the United States and other countries. Used under license from Albert P. Patterson D/B/A WWA Superstars of Wrestling.

(Pl's Exs., Vol. V, Ex. 73.)

A press release for the June 7, 2003, performance Patterson staged at the United Community Center states, "'World Wrestling Association Superstars of Wrestling,' Inc." centered on the sheet with the phrase split onto separate lines after "Association." (Defs.' App., Ex. 27, 300145; Pl.'s Exs., Vol. V, Ex. 77.) The next line reads word "presents," the line beneath it reads "W.W.A. Superstars Wrestling Live." (Id.) Other than the words "press release," the press release appears in the uniform rather stylized font. (Id.)

Photographs from a June 23, 2002, event staged by Patterson depict a black banner with white letters reading: "World Wrestling Assoc.™" in the first line of block letters and "W.W.A. Superstar's"™ on the second line, in slightly larger but similar block style letters. (Defs.' App., Ex. 27, 1-3 (unnumbered).) In the middle of the banner a large stylized block letter "S" abuts the right side of a large white star with the letter "S" in the middle. (Id.) A large stylized block letter "W," abuts the left side of star. (Id.) The bottom line of the banner bears a white rectangle with black block letters which read: "SUPERSTARS OF WRESTLING." (Id.)

---

*See* http://www.biography.com (citing Crystal Reference (2004)) (in "Bio Search" area click "Go," in new screen at search "name" box, enter "Dennis Rodman" and in "Keyword" box type "Basketball," click on "Submit Query" box).)

-25-

A black baseball-style visored cap bears white stitched block style letters is similar to the first to lines of Patterson's banner. (Defs.' App., Ex. 33). The cap reads: "World Wrestling Assoc.™" in the first line of block letters and "W.W.A. Superstar's"™ on the second line, in slightly larger but similar block style letters. (Id.)

According to his testimony at his November 2004 deposition, Patterson is claiming that the Defendant wrestling business's use of "World Wrestling Federation" and "WWF," as well as "World Wrestling Entertainment," and "WWE" are confusingly similar to his marks "World Wrestling Association" and "WWA." In his deposition, Patterson was asked, "The way you promoted characters, the way you created characters, was it any different than the way every other promotion was promoting characters at the time?" (Defs.' App., Ex. 3, 56.) Patterson responded, "I guess it would be the same." (Id.)

Patterson filed for registration of the mark "World Wrestling Association" under Serial Number 75/879939 for entertainment services in the nature of wrestling matches; wrestling videotape production; and entertainment services in the nature of ongoing television programs featuring wrestling" and "promoting wrestling competitions of others." (Pl.'s Exs., Vol. V, Ex. 79.) In a final action mailed February 21, 2002, the PTO determined that there was a likelihood of confusion between "World Wrestling Association" and "World Wrestling Federation." (Id.) After such determination, Patterson filed this action while also advising the PTO of its pendency. As a result, the PTO took no further action on the trademark application for "World Wrestling Association" and the findings with respect to Serial Number 75/879938.

## *ANALYSIS*

Before attempting to strike a blow at the substance of Patterson's claims, the Defendants launch a volley of procedural defenses. The Court will first address these defenses.

### *Preclusion of Action/Claims*

The Defendants first argue that Patterson's claims are fundamentally inconsistent with both resolution of the 1990 action and his course of conduct over the past 20 years. The Defendants therefore invoke the doctrines of res judicata, judicial estoppel, and laches. Patterson respectively argues that res judicata does not apply, there can be no judicial estoppel without prior litigation of the issue, and laches does not put his claims to rest.

### *Res Judicata*

Res judicata is intended to protect "a victorious party from being dragged into court time and time again by the same opponent on the same cause of action." *Lee v. Vill. of River Forest*, 936 F.2d 976, 981 (7th Cir. 1991) (quoting *Magnus Elec., Inc. v. La Republica Arg.*, 830 F.2d 1396, 1403 (7th Cir. 1987)). Federal law applies if the prior judgment was rendered in federal court on federal law claims. *See Hudson v. Hedge*, 27 F.3d 274, 276 (7th Cir. 1994); *Connor v. Reinhard*, 847 F.2d 384, 394 (7th Cir. 1988); *In re. Energy Co-op., Inc.*, 814 F.2d 1226, 1230 (7th Cir. 1987). Under federal law, the requirements for res judicata are: (1) a final judgment on the merits; (2) an identity of the causes of actions; and (3) an identity of the parties or their privies. *See Golden v. Barenborg*, 53 F.3d 866, 869 (7th Cir. 1995); *In re. Energy Co-op., Inc.*, 814 F.2d at 1230.

-27-

In its March 24, 2004, decision and order on the Defendants' motion to dismiss this action, the Court ruled that the judgment in the 1990 action constituted a "prior judgment" for purposes of res judicata analysis. (Court's March 29, 2004, Decision and Order, at 10 (citing *Verband der Zuechter des Oldenburger Pferdes e.V. v. Int'l Sporthorse Registry Inc.*, 55 U.S.P.Q.2d 1550, 1556, 1999 WL 33109652 (N.D. Ill. 1999).) With respect to an identity of causes of action, the Court concluded that there was none. (*Id.* at 12.) With respect to privity, the Court concluded that Patterson was in privity with the plaintiffs, but Good Humor had not established that it was in privity with Titan. (*Id.* at 12.)

Now, at the summary judgment stage, the Defendants ask the Court to revisit its determinations. The finding of a final judgment has not been assailed by the parties. Furthermore, the undisputed facts presented to the Court now show that the Defendant wrestling business has a license agreement with Good Humor.[32] Thus, privity between these two entities has now been shown.

The Court is left to analyze the final element – the identity of causes of action. In previously holding that there was no identity of causes of action,[33] the Court relied upon the allegations of Patterson's complaint, which challenges the Defendant wrestling business's use of the marks – (1) "World Wrestling Association," (2) "WWA, Superstar Wrestling, Superstars

---

[32]Patterson asserts that the Defendant wrestling business has no rights in the "WWF" mark, because the Defendant wrestling business had a license agreement with the Fund. That contention need not be resolved in addressing the Defendants' motion for summary judgment.

[33]A claim is deemed to have "identity" with a previously litigated matter if it is based on the same, or nearly the same, factual allegations arising from the same transaction or occurrence. *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996) (quoting *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338-39 (7th Cir. 1995) and citing *Restatement (Second) of Judgments* § 24 (1982)). *See also, Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1363 (Fed Cir. 2000).

-28-

Wrestling," (3) "Superstars of Wrestling," (4) "Superstars of Pro Wrestling,"(5) "WWA Superstar

Wrestling,"(6) "WWA Superstars Wrestling,"(7) "WWA Superstars of Wrestling,"and (8)

"WWA Superstars of Pro Wrestling." The Defendants rely upon Patterson's statement in his

November 2004, deposition that "WWE" and "World Wrestling Entertainment" are confusingly

similar to his marks, "WWA" and "World Wrestling Association." However, this contention was

already noted in the Court's March 29, 2004, decision. The Court stated:

> In the 1990 litigation, the plaintiffs challenged Titan's use of
> the marks Superstar Wrestling, Superstars of Wrestling, and
> Superstars of Pro Wrestling. Titan no longer exists. Titan is now
> using WWE and the name World Wrestling Entertainment.
>
> In the instant case, this claim was not raised during the prior
> litigation nor could have it since the prior litigation was nearly a
> decade before WWE began using WWE and World Wrestling
> Entertainment. Thus, Patterson's claims do not arise from the same
> transaction or occurrence. *See Chromalloy American Corp., v.*
> *Kenneth Gordon (New Orleans)., Ltd.,* 736 F.2d 694, 698 (Fed. Cir.
> 1984)("The claim against LADY GORDON is simply not the same
> claim as one against GORDON OF NEW ORLEANS. The
> 'transactional facts' are different in that a different mark used over
> a different period of time is involved."); *Realex Chemical*
> *Corporation v. S.C. Johnson & Son, Inc.*, 849 F.2d 299, 303 (8th Cir.
> 1988). *See also, Metromedia Steakhouses,Inc., v. Pondco Ii Inc.*, 28
> U.S.P.Q.2d 1205 (Trademark Trial & App. Bd. 1993); *Institut*
> *National Des Appellations d'Origine v. Brown-Forman*, 47
> U.S.P.Q.2d 1875, 1892-96 (Trademark Trial & App. Bd. 1998).
> Thus, the claims in this case differ from the claims in the 1990
> action.

Thus, such argument is not persuasive. There is no **complete identity of the causes of actions**

between the 1990 action and the instant action.

The Defendants contend that Patterson was aware of their use of certain marks well

before the present litigation, yet he chose not to litigate the issue. Insofar as Patterson failed to

raise those issues, the Defendants argue that the opportunity forever passed and res judicata now closes the door on relief. Specifically, the Defendants argue that Patterson consented to their use of "WWF" and "World Wrestling Federation" and was aware of Titan's usage of the marks during the 1990 action.[34] The final pretrial report for the 1990 action refers to the marks "WWF" and "World Wrestling Federation." During her deposition in the 1990 action, L. McMahon also claimed ownership in "World Wrestling Federation." Thus, during the course of the 1990 action, Patterson knew that the marks "WWF" and "World Wrestling Federation," were being used by Titan. The Defendants have established that Patterson's infringement claims based on "WWF" and "World Wrestling Federation" are barred by res judicata because those claims existed during the pendency of the 1990 action and arose out of the same transactions at issue in that litigation. Patterson could have litigated the alleged infringement of the "World Wrestling Federation" and "WWF" at that time. Having failed to do so, Patterson's claims against the Defendants based on their use of "WWF" and "World Wrestling Federation" are barred by res judicata and subject to dismissal on summary judgment.

The Defendants also assert that res judicata bars Patterson's claims involving "WWF Superstars" and "WWE Superstars." Their assertion relies on the Consent Order stating that neither party is barred from using "Superstars," their characterization of Judge Curran's statements at the November 1992 contempt hearing, and Patterson's 1995 TTAB cancellation proceedings. Taking these sources in order: The Consent Order itself does not contain any

[34]There is a dispute as to whether Patterson consented to the Defendant wrestling business's use of the terms – the Defendants rely upon a purported joint final pretrial report in the 1990 action, though neither Patterson nor his attorney signed that report. (See Defs. App., Ex. 2 (Final Pretrial Order on the Counter and Third Party Claims filed Jan. 6, 1992, 4).) So, the Defendants have not established that Patterson consented to Titan's use of "World Wrestling Federation" and "WWF."

discussion of the marks "WWF Superstars" or "WWE Superstars." ("WWE" was not used by the Defendant wrestling business until May 2002). Because it did not contemplate these marks, the Consent Order does not provide a basis for res judicata. Even though, Judge Curran rejected Patterson's claim that "WWF Superstars" infringed on "WWA Superstars" during the November 1992 contempt hearing, that hearing was not part of the consent judgment. The written Consent Order preceded the contempt hearing. In fact during the contempt hearing, Judge Curran considered only whether the Defendant wrestling business had violated the Consent Order, **not** whether the Defendant wrestling business was infringing Patterson's marks. The contempt hearing does not provide a basis for establishing that res judicata bars Patterson's infringement claims against "WWF Superstars" and "WWE Superstars."

Additionally, the record does not support the Defendants' contentions of res judicata based on Patterson's 1995 TTAB cancellation proceedings against the Defendant wrestling business's "WWF Superstars" mark. To the extent, the Defendants assert that the TTAB held that res judicata barred that proceeding, their contention is not support by the record of that proceeding. To the extent, the Defendants are relying upon the TTAB's alternative holding on the motion to dismiss–that the consent decree allowed either party to use "Superstars," and, consequently, the Defendant wrestling business's use of the acronym "WWF" with "Superstars" could not be the source of damage to Patterson – neither party cites any case law regarding the res judicata effect of TTAB proceedings on subsequent district court proceedings. "[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point." *Cent. States, Se. & Sw.*

-31-

*Areas Pension Fund v. Schilli Corp.*, 420 F.3d 663, 669 (7th Cir. 2005) (citations omitted). Thus, the Defendants have not demonstrated res judicata as to Patterson's claims of infringement based on the marks "WWF Superstars" and "WWE Superstars."

*Judicial Estoppel*

The Defendants also maintain that Patterson's infringement claims based on the Defendants' use of the marks "WWE" and "World Wrestling Entertainment" are barred by judicial estoppel. The doctrine of judicial estoppel prevents a party from adopting a position in a legal proceeding contrary to a position successfully argued in an earlier legal proceeding. *Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 891 (7th Cir. 2005). Judicial estoppel is "an equitable concept providing that a party who prevails on one ground in a lawsuit may not . . . in another lawsuit repudiate that ground." *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999) (quoting *Ogden Martin Sys. of Indianapolis v. Whiting Corp.*, 179 F.3d 523, 526 (7th Cir. 1999)). The purpose of this doctrine is to protect the integrity of the judicial process. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

For judicial estoppel to apply, (1) the latter position must be clearly inconsistent with the earlier position; (2) the facts at issue must be the same in both cases; and (3) the party to be estopped must have prevailed upon the first court to adopt the position. *Urbania v. Cent. States, Se. & Sw. Areas Pension Fund*, 421 F.3d 580, 589 (7th Cir. 2005) (citing *Hook*, 195 F.3d at 306.) A fourth factor to be considered is whether the operative facts remain the same in both cases. *Jarrard v. CDI Telecomm., Inc.*, 408 F.3d 905, 915 (7th Cir. 2005).

-32-

In raising judicial estoppel, the Defendants maintain that Patterson represented in the 1990 action that the "WWF" mark, and the "World Wrestling Federation" mark "does not infringe upon any of Patterson's claimed marks." (Defs.' Br. in Supp. of Mot. for Summ. J. at 27 (citing Defs.' PFOF ¶ 28).) Paragraph 28 of the Defendants' proposed findings of facts cites the Final Pretrial Order on the Counter and Third Party Claims marked as Exhibit 2 in the Defendants' Appendix in Support of their Motion for Summary Judgment. The finding of fact is contested by Patterson, who points out that he did not sign the document. (See Pl.'s Resp. to Defs.' PFOF ¶ 28 & Defs.' App. Ex. 2 at 4.) Thus, there is a disputed issue of material fact regarding Patterson's purported representation in the 1990 action. Given such a factual dispute, the Defendants have not established the first prong of judicial estoppel, namely, that Patterson's current position is "clearly inconsistent" with his earlier position. *Urbania*, 421 F.3d at 589.

### *Laches*

The Defendants also assert that Patterson's claims with respect to "World Wrestling Federation," "WWF" and "WWF Superstars" are barred by laches. Laches is an equitable doctrine derived from the maxim that those who sleep on their rights lose them. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999). "For laches to apply in a trademark infringement case, the defendant must show that the plaintiff had knowledge of the defendant's use of an allegedly infringing mark, *see Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1040 (2d Cir. 1980), that the plaintiff inexcusably delayed in taking action with respect to the defendant's use, and that the defendant would be prejudiced by allowing the plaintiff to assert its rights at this time." *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792-93 (7th Cir. 2002)

(citing *Hot Wax*, 191 F.3d at 820 and 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:1, at p. 31-8 (2001)). Prejudice to a defendant due to a delay may be established when the plaintiff's assertion of a previously available claim would be inequitable in light of the plaintiff's delay in bringing the claim **and** a defendant has changed position in a way that would not have occurred but for the plaintiff's delay. *See Hot Wax*, 191 F.3d at 824. Laches is a question of degree: if the delay is lengthy, prejudice is more likely to have occurred and less proof of prejudice will be required. *Id.*

The Defendants cite to both federal law and Wisconsin common law regarding laches. (See Defs' Br. in Supp. of Mot. for Summ. J. 28.) However, the application of federal, not state, law controls. *Hot Wax*, 191 F.3d at 820-21. Nonetheless, state law plays a role in analyzing whether laches applies. *Id.* Because the Lanham Act does not contain a statute of limitations, federal courts have referred to analogous state statutes of limitations to determine whether a presumption of laches should apply. *Id.* at 821(citing *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985)). However, whether a Lanham Act claim has been brought within the analogous state statute of limitations is not the sole indicator of whether laches may be applied in a particular case. *Hot Wax, Inc.*, 191 F.3d at 821-22. The multiple considerations as previously outlined are to be considered.

The Defendants suggest that the Court use the three-year statute of limitations contained in Wis. Stat. § 100.18(11)(b)(3) of the Wisconsin Deceptive Trade Practices Act. (Defs.' Br. in Supp. of Mot. for Summ. J. 28-29.) As authority, they cite *Chattanoga Manufacturing Inc.*, 301 F.3d at 793, wherein the Court of Appeals affirmed the application of

-34-

the three-year statute of limitations of the Illinois Consumer Fraud and Deceptive Practices Act, the analogous Illinois statute, to a Lanham Act laches issue. While Patterson opposes the application of laches to the action, he has not responded to the Defendants' suggestion regarding the relevant statute of limitations. (Mem. in Opp'n to Defs' Mot. for Summ. J. 25-27.) So, the Court will use the three-year Wisconsin statute of limitations as a guide.

In 1984 or 1985, Patterson watched "WWF Superstars of Wrestling" *WrestleMania I* in which the "World Wrestling Federation" and "WWF" marks featured prominently. More than ten years later, on January 1, 1996, Patterson sent WWE a complaint that was virtually identical to the complaint in this action. However, Patterson still delayed filing the instant action for another seven years. Cumulatively, Patterson delayed over eighteen years before filing this action. Because Patterson exceeded the three-year guidepost statute of limitations, the presumption of prejudice attaches. *See Hot Wax*, 191 F.3d at 821. During that span of time, Patterson filed an action against the Defendant wrestling business but he did not challenge the use of "WWF" or "World Wrestling Federation." Between 1984 and June 12, 2002, the Defendant wrestling business invested in the "WWF," "World Wrestling Federation," and "WWF Superstars" marks. During the period of Patterson's inaction, the Defendant wrestling business advertised and developed its wrestling entertainment products. *See Id.* at 824. Under the circumstances, Patterson's claims arising out of the Defendant wrestling business's use of "WWF," "World Wrestling Federation," and "WWF Superstars" marks are barred by laches.

## *Lanham Act Claims*

Given the Court's determinations on res judicata and laches, the Court need only address Patterson's trademark infringement claims related to the Defendants' use of the marks "World Wrestling Entertainment" and "WWE." To prevail on a Lanham Act claim, a plaintiff must establish that (1) its mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers. *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000)). While federal registration of a mark provides it with certain advantages, including the presumption of validity (see 15 U.S.C. § 1115(a); *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673 (7th Cir. 2001)), a mark need not be registered to be protected under the Lanham Act. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). A mark is also protectable once it is used in commerce. 15 U.S.C. §§ 1125(a), 1127. *See also, TMT N. Am., Inc. v. Magic Touch GMbH*, 124 F.3d 876, 881 (7th Cir. 1997); *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 954-55 (7th Cir. 1992).

In a trademark dispute, the Court first inquires whether any party has trademark rights in the words or symbols that are at issue. *See, TMT N. Am., Inc.*, 124 F.3d at 881. A party can prevail by establishing rights through "priority of use" if the party demonstrates that it used the allegedly infringing mark first. *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992). A party can also establish priority of use by demonstrating that it used a variation of the mark first. *See Navistar Int'l Transp. Corp. v. Freightliner Corp.*, 52 U.S.P.Q.2d 1074, 1076 (N.D. Ill. 1998).

## *Tacking*

Courts apply a "tacking" rule when analyzing situations involving priority based on a party's use of a mark. The "tacking" rule allows a party to add time spent using an older mark to the time spent using a newer mark, if both marks make "the same continuing commercial impression." *Id*. at 1076-77. Tacking is a question of fact. *Id*. at 1076. The court of appeals for this circuit has not formally adopted tacking, but it has adopted a similar rule in the somewhat analogous situation of abandonment. *Id*. (citing *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 955 (7th Cir. 1992) ("Minor changes in a mark which did not change the basic, overall commercial impression created on buyers will not constitute any abandonment [when determining priority of use]." ) Commercial impression is the impression of the consumers of the product. *Navistar Int'l Transp. Corp.*, 52 U.S.P.Q.2d at 1079. The party asserting the tacking doctrine must support it with probative evidence. *Id*. The standard for demonstrating tacking is "far higher than the likelihood of confusion standard applicable to the underlying trademark dispute." *Id*. at 1080.

The record establishes that Patterson first used the marks "World Wrestling Association" and "WWA" for wrestling entertainment services on March 5, 1978, in conjunction with a wrestling event at the Palace in Milwaukee. In 1989, King Kong Enterprises, a business incorporated in June 1988, filed a statement of adoption of the trade name "World Wrestling Association" with the Wisconsin Secretary of State. Beginning in 1989, business entities organized by Patterson sold caps and T-shirts with "World Wrestling Association" and variants such as "W.W.A." and "World Wrestling Assoc." The mark "WWA" was also used in a 1991

-37-

press conference promoting the wrestler Gargantua and at the 1992 African World Festival live wrestling event. Patterson promoted eight wrestling events between 1993 and 2003 using the marks "World Wrestling Association" and "WWA" shows.

However, the Defendants assert that Patterson does not possess protectable trademark rights in "World Wrestling Association" and "WWA" because his claims are barred by the Defendant wrestling business's priority of use and, under the doctrine of tacking, the Defendant wrestling business's priority of use applies to "World Wrestling Entertainment" and "WWE." Patterson counters that, as a licensee of the mark "WWF" from the World Wildlife Fund, the Defendant wrestling business did not have an ownership right in the "WWF" mark. (Patterson's Mem. in Opp'n to Defs.' Mot. for Summ. J. ("Patterson's Opp'n Mem.") at 13.) Patterson, further contends that to the extent the Defendant wrestling business had an ownership right in "World Wrestling Federation," it has abandoned[35] that ownership and that ownership does not tack. The Court proceeds to weigh these arguments.

The Court begins by noting that the Defendant wrestling business was formed in 1963 and used the name "World Wide Wrestling Federation." At some disputed time, the Defendant wrestling business began using "World Wrestling Federation." In a June 3, 1983, declaration to the PTO, L. McMahon claimed that the Defendant wrestling business began using "World Wrestling Federation" in February 1983. In January 1994, the Defendant wrestling business entered into a confidential agreement with the Fund allowing the Defendant wrestling business limited permission to use the "WWF" mark. In May 2002, "WWF" changed its brand

---

[35]A defense of abandonment results in the loss of trademark rights against the world. *TMT N. Am., Inc.*, 124 F.3d at 881.

name to "World Wrestling Entertainment" and "WWE." The brand name change was accompanied by a massive rebranding campaign including a new "scratch" logo with the letters "WW," and emphasis on the brand's continuing attitude.

In presenting their tacking argument, the Defendants rely extensively on *Navistar International Transportation Corporation.*, 52 U.S.P.Q.2d at 1074, an Illinois district court trademark infringement case involving competing truck manufacturers. *Navistar*, addressed whether the years dating back to 1970 could be tacked onto the defendant's post-1994 use of the American LaFrance Eagle mark on fire trucks, which would give the defendant priority over the plaintiff's use of the mark.

Tacking is based on whether two marks make the same commercial impression on consumers. *Navistar Int'l Transp. Inc.*, 52 U.S.P.Q.2d at 1080. Asserting the continuity of the commercial impression of its marks, the Defendant wrestling business relies on paragraphs 57 through 65 of the Defendants' proposed findings of fact, which are based on the affidavit of L. McMahon. (*See* Defs.' Br. in Supp. of Mot. for Summ. J 16-17.) While L. McMahon is the chief executive officer of the Defendant wrestling business  (L. McMahon Aff. ¶ 2), she is not a consumer of its products. Thus, her affidavit does not constitute competent evidence of the continuity of commercial impression. *See Navistar Int'l Transp. Corp.*, 52 U.S.P.Q.2d at 1081-82. The Defendants have not presented any other evidence demonstrating that the "WWE" and "World Wrestling Entertainment" marks and their earlier marks create the same commercial impression. Thus, because the Defendants failed to carry their burden of showing the continuity

of commercial impression, they are not entitled to summary judgment on their tacking theory.[36]

*Patterson's Interest*

The Defendants maintain that Patterson never acquired trademark rights in "World Wrestling Association" and "WWA" because he has not made bona fide use of the marks in commerce. Patterson argues to the contrary and also maintains that the Defendants' market presence and wrongful claim of ownership of "WWF" in its trademark applications have precluded him from developing his marks.

With respect to bona fide use of the trademarks, an entity only acquires rights in a trademark through commercial use of the mark. *Johnny Blastoff, Inc., v. L.A. Rams Football Co.*, 188 F.3d 427, 434 (7th Cir. 1999). Under the common law, ownership is conferred upon the person who employs the first actual use of a mark in a genuine commercial transaction. Also under common law, the winner of the race to the marketplace establishes exclusive use of the mark. *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992). To establish use, the mark must be attached to the product or service sold to the public and must be continuous and bona fide. *Id*. at 502 n.†-503. As long as there is genuine use of the mark in commerce, ownership may be established even if the first uses are not extensive and do not result in "deep market penetration or widespread recognition." *See Allard Enters. Inc. v. Advanced Programming Res.*, 146 F.3d 350, 358 (6th Cir. 1998); *Kathreiner's Malzkaffee Fabriken v. Pastor Kneipp Medicine Co.*, 82 F. 321, 326 (7th Cir. 1897) (for rights in a mark to accrue, "[i]t

---

[36]This case is seemingly more complex than *Navistar* because the Defendant wrestling business claims tacking as to a mark which has undergone more than a single name/mark change. The Court need not belabor the issue because the Defendant wrestling business has not presented the requisite evidence of the commercial impression of *consumers* of their products.

-40-

is not essential that its use has been long continued, or that the article should be widely known, or should have acquired great reputation.").

The parties dispute the exact number of times that Patterson used the marks "WWA," "World Wrestling Association," and "World Wrestling Association WWA" between 1993 and the present. However, the Defendants concede that Patterson has established eight uses of such marks between 1993 and 2003. Patterson has established additional uses of the marks during that time. Construing the evidence in the light most favorable to Patterson, the non-movant, the record also reflects that he did use the "World Wrestling Association" or "WWA" or "World Wrestling Association WWA" marks on more than eight occasions. The mark was used at several events staged at the Eagles Club, for seven consecutive years at annual African World Festival, at the Rodman show in Australia, in August 1993 in Detroit, and in four co-produced shows with Rampage Wrestling. Viewing the evidence in the light most favorable to the non-movant, Patterson has presented sufficient evidence upon which a reasonable jury could find that he engaged in bona fide use of the "WWA," "World Wrestling Association" and "World Wrestling Association WWA" marks.

### Likelihood of Confusion

Further, the Defendants contend that there is no likelihood of confusion between the Defendants' "WWE" and "World Wrestling Entertainment" marks and Patterson's marks. Patterson maintains that the PTO found a likelihood of confusion between "World Wrestling Federation" and "World Wrestling Entertainment" and the testimony of Naboisek and May

-41-

provides evidence of actual confusion.[37]  (*See* Patterson's Opp'n Mem. 26.)  Patterson also maintains that the Defendant wrestling business's market presence and its wrongful claim of ownership precluded Patterson from developing his marks.

In this circuit, the following factors are used to evaluate whether a likelihood of confusion exists in a trademark case: (1) the similarity of the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiffs. *See Packman*, 267 F.3d at 643. "None of these factors by itself is dispositive of the likelihood-of-confusion question, and different factors will weigh more heavily from case to case depending on the particular facts and circumstances involved." *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1087 (7th Cir. 1988) (internal citations and quotation marks omitted). As a consequence, the "weight and totality of the most important factors in each case will ultimately be determinative of the likelihood of confusion, not whether the majority of the factors tilt the scale in favor of one side or the other." *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*,

---

[37]On the final page of his brief, Patterson asks the Court to consider his response brief as a motion for summary judgment. He also states that the Defendants did not request leave to file a brief in excess of 30 pages.

Rule 7 of the Federal Rules of Civil Procedure provides: "[a]n application to the court for an order shall be by motion which, unless made during a hearing, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." Patterson's brief is not a motion and will not be treated as such. Fed. R. Civ. P. 7.

Furthermore, Civil L.R. 7.1(f) (E.D. Wis) states:

Except by permission of the Court, principal briefs on motions must not exceed 30 pages and reply briefs must not exceed 30 pages, exclusive of pages containing the statement of facts, the proposed findings of fact as required by Civil L.R. 56.2, exhibits, and affidavits, but inclusive of headings and footnotes.

About 7½ pages of the Defendants' brief in support of their motion for summary judgment is a statement of the facts (labeled as an introduction). The remaining 1½ pages exceed the mandatory page limit. But, in the absence of a proper motion challenging the excess pages, the Court will take no action.

870 F.2d 1176, 1187 (7th Cir. 1989). Even though no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the "most important factors" in a likelihood-of-confusion case. *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989); *see also Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 462 (7th Cir. 2000).

Likelihood of confusion is question of fact. *See Packman*, 267 F.3d at 643. Nevertheless, this issue may be resolved on summary judgment "if the evidence is so one-sided that there can be no doubt about how the question should be answered." *Id.* (citation omitted).

Although Patterson's brief does not address the seven factors which comprise the likelihood-of-confusion analysis, he relies on the contention that the PTO found a likelihood of confusion between his marks and "World Wrestling Federation" and relies upon that finding as a basis for arguing that there is also a likelihood of confusion between his marks and "World Wrestling Entertainment," "World Entertainment," and "WW."[38]

Patterson does not cite any legal authority regarding the import of a PTO finding. The Defendants argue that reliance upon the PTO's determination is misplaced. In support of their positions, they cite, among other cases, the unpublished decision of *Miquel Torres, S.A. v. Cantine Mezzacorona, S.C.A.R.L.*, No. 99-1935, 2004 WL 2126869, at *3 (4th Cir. Sept. 24, 2004).[39] In *Miquel Torres,* a district court rejected Torres's collateral estoppel argument based

---

[38]Patterson states that the PTO found a "substantial likelihood of confusion." (Pl's Opp'n Mem. at 26 (citing Pl.'s Exs., Ex. 79).) However, the PTO found a "likelihood of confusion." (Pl.'s Exs., Vol. V, Ex. 79 (PTO Final Action) at 2-3.)

[39] The Fourth Circuit permits citation to unpublished opinions when no other decision "would serve as well." 4th Cir. R. App. P. 36(c). *See also, United States v. Reneslacis,* 349 F.3d 412, 416 (7th Cir. 2003).

on a prior TTAB finding of likelihood of confusion, that had been affirmed by the Federal Circuit. The district court explained that the TTAB likelihood-of-confusion analysis differs from the "likelihood of confusion analysis employed in a full blown infringement action." *Id. See also John Morrell & Co. v. Doyle*, 97 F.2d 232, 234-35 (7th Cir. 1935).

The appeals court agreed and emphasized the key to determining whether controlling effect should be accorded to a prior TTAB ruling or a Federal Circuit affirmation on the likelihood of confusion is whether rulings have taken into account the context of the marketplace in a meaningful way. *Torres*, 2004 WL 2126869, at \*3. *Torres* further held that a district court cannot altogether omit consideration of the TTAB's factual determinations insofar as they are relevant to the infringement analysis. *Id*. The *Torres* court stated "at the very least, such findings should be considered 'powerful *evidence*' of the presence (or lack thereof) of one or more of the factors that must be considered in an infringement action." *Id*. (quoting *Am. Online, Inc. v. AT & T Corp.*, 243 F.3d 812, 817 (4th Cir. 2001)).

Here, Patterson relies on the PTO determination that there was a likelihood of confusion between his "World Wrestling Association" mark and the "World Wrestling Federation" mark, but leaps from that decision to the likelihood of confusion between his "World Wrestling Association" and "WWA" marks and "World Wrestling Entertainment," "World Wrestling," and "WW." (Patterson Opp'n Mem 27.)

The PTO decision only addressed the likelihood of confusion between "World Wrestling Federation" and "World Wrestling Association." The PTO first found that the two marks were "substantially similar in appearance and commercial impression," stating that the

-44-

and manner of concurrent use, the degree of care likely to be used by consumers, or the strength of Patterson's marks. *See Id*.

If the Court were addressing the likelihood of confusion between Patterson's "World Wrestling Association" and the "World Wrestling Federation" marks, the PTO's findings would constitute evidence with respect to the seven relevant likelihood of confusion factors. *See Torres*, 2004 WL 2126869, at *3. However, the only issue now before the Court is the likelihood of confusion between Patterson's marks and the "World Wrestling Entertainment" and "WWE" logo. The PTO decision adjudicating a different issue is of tangential importance. Patterson has provided not justification for leaping from the PTO's decision on the likelihood of confusion between "World Wrestling Federation" mark as compared to the "World Wrestling Association," to the likelihood of confusion between the "WWE," and/or "World Wrestling Entertainment" marks and/or the "WWA" and "World Wrestling Association" marks.

### a. Similarity of the Marks

To determine whether two marks are similar, the Court must consider what happens in the marketplace; a side-by-side comparison of the marks is insufficient. *Packman*, 237 F.3d at 643. Patterson's most recently used "World Wrestling Association" and "WWA" is a June 7, 2003, performance at the United Community Center. The press release for that show states, "'World Wrestling Association Superstars of Wrestling', Inc." and "W.W.A. Superstars Wrestling Live" in the same stylized font. A different format and version of Patterson's marks are depicted in photographs of a black banner used at a June 23, 2002, event staged by Patterson. The banner exhibits white letters reading: "World Wrestling Assoc.™" in the first line of block

-46-

letters and "W.W.A. Superstar's"™ on the second line, in slightly larger but similar block style letters. A large stylized block letter "S" abuts the right side of a large white star with the letter "S" in the middle and a large stylized block letter "W," abuts the left side of same star. The bottom line of the banner contains a white rectangle with black block letters, spelling "SUPERSTARS OF WRESTLING."

A photograph of a black baseball-style visored cap, which is also part of the record, is stitched with white block style letters similar to the first two lines of Patterson's banner. The cap reads: "World Wrestling Assoc.™" in the first line of block letters and "W.W.A. Superstar's"™ on the second line, in slightly larger but similar block style letters. Among eight events produced by Patterson, he variously used "WWA Superstars of Wrestling," "World Wrestling Association WWA Superstars" and "World Wrestling Association Superstars of Wrestling."

The "'WWE' scratch logo," which the Defendant wrestling business has used since May 2002, consists of the letters "WW" vertically stacked in type which has a raw or scribble-type appearance. This logo appears on substantially all WWE's goods and services. The "scratch logo" also consistently appears in the bottom right center of all WWE television programing and home video products.

At times, the Defendant wrestling business also used the words "World Wrestling Entertainment" with its scratch logo. Patterson uses "World Wrestling Association." The words "Association" and "Entertainment" do not sound similar. Both words have distinct meanings.

-47-

"Association" means "[a]n organized group of people who share a common interest, activity or purpose." *Webster's II, New Riverside University Dictionary* at 132. "Entertainment" means something that holds a person's attention. *See Id.* at 435. Unlike the words "Association" and "Federation," considered by the PTO, the Court finds that "Association" and "Entertainment" are not synonym or synonymous.

While both Patterson and the Defendant wrestling business use the mark "WW," and the phrase "World Wrestling," the appearance and placement of the letters and words are distinct such that a consumer would not associate one product with the other. *See Packman*, 267 F.3d at 643. Differences in packaging, coloring and labeling can be significant in determining whether there is a likelihood of confusion. *Id.* at 644. The distinctiveness of Patterson's and the Defendant wrestling business's mark weighs against any likelihood of confusion. *Id.*

### b. Defendants' Intent

The Defendants' intent may bolster a claim of likelihood of confusion. *Id.* A party may present evidence that the defendants are trying to "pass off" their products as having come from the plaintiff. *Id.* Despite construing the evidence in the light most favorable to Patterson, there is no evidence that the Defendants intended to "palm their goods off" as having come from Patterson. To the contrary, in the 1990 action, Judge Curran observed that Patterson might be attempting to "piggyback" the benefits which might flow from the identity of WWF.

### c. Evidence of Actual Confusion

Patterson has not proffered any admissible evidence of actual confusion. The testimony of Naboisek, the WWA announcer, and May, who wrestled for WWA, constitutes the

only evidence of actual confusion Patterson has mustered. May once told someone that he worked for "World Wrestling Association;" the person understood this to mean that May wrestled for the Defendant wrestling business. May's report of what the unidentified person told him is inadmissible hearsay evidence. *Friedel*, 832 F.2d at 970. Patterson has also presented Naboisek's testimony that De Angelo, a fan, thought Naboisek worked for "WWF." Nabosiek's testimony about DeAngelo's statement is also inadmissable hearsay evidence. *Id.* Even if this evidence were admissible and the purported individual was a consumer of wrestling events or related products, *de minimis* evidence of confusion is properly discounted. *See Packman*, 267 F.3d at 645 (holding evidence of four phone calls from two friends, the plaintiff's father and a former co-worker received by the plaintiff were not probative of, or "material" to, the issue of actual confusion.)

### d. Remaining Likelihood of Confusion Factors

Both parties promote and produce wrestling shows and market videotapes of their shows, as well as T-shirts and caps. However, the Defendant wrestling business has nationally circulated magazines and has "WWE"-branded video games, books, and other WWE merchandise sold on its website and through national retailers. In addition, WWE's services and products have a distinctive style and manner, minimizing the likelihood of confusion with Patterson's products and services. Most of WWE's products are branded with its scratch logo. *See Id.* at 645.

In terms of area and manner of use, Patterson primarily promotes and sells his products in the southeastern Wisconsin. The Defendant wrestling business, a publically traded

corporation on the New York Stock Exchange, is an international media giant. Patterson's distribution area is clearly smaller than that of the Defendants. *See Id.* at 646. The distinction between the areas where the parties' products appear minimizes the likelihood of confusion. *See Id.*

The sole evidence on the degree of care exercised by consumers, is that wrestling fans are highly knowledgeable and loyal with respect to professional wrestling programming and merchandise. Such evidence indicates that the relevant consumers are sophisticated and would be careful in choosing wrestling events and related products. In other words, they would likely be able to differentiate the parties' respective products. Patterson has not raised a genuine issue of material fact with respect to the sophistication of consumers, which weighs against the likelihood of confusion. *See Id.*

Finally, in considering the strength of Patterson's mark, the Defendants maintain that Patterson's marks are extremely weak, citing the absence of evidence of consumer recognition of Patterson's marks, the limited area in which Patterson has used the marks, and Patterson's minimal expenditures of money on the marks. (Defs.' Br. in Supp. of Mot. for Summ. J. at 36.) The Defendants do not cite any case law indicating that the foregoing is relevant to the strength of the mark (*see id.*), and Patterson does not address the issue.

However, the strength of the mark in trademark parlance refers to the classification of a mark. Trademarks are classified in one of four categories - fanciful, arbitrary, descriptive, and generic. *See Sullivan v. CBS Corp.*, 385 F.3d 772, 776 (7th Cir. 2004). The amount of protection available tends to increase from generic to fanciful. *Id.* Generic words are entitled

-50-

to no protection, whereas fanciful words are usually entitled to strong protection. *Id*. The PTO examiner found that the words "Wrestling Association" alone are descriptive. (Pl.'s Exs., Vol. V, Ex. 79, 1.) A descriptive term is one that describes a characteristic or ingredient of a product. *Sullivan*, 385 F.3d at 776. However, the addition of the "World" to the mark, given the geographic scope of Patterson's business, makes "World Wrestling Association," arbitrary. *See Id*. ("Survivor" is an arbitrary mark for a band.) The Court need not extensively consider the strength of Patterson's mark. The three most important elements of "likelihood of confusion" have not been established. Considering all the evidence related to the seven relevant factors in the light most favorable to Patterson, there is insufficient evidence upon which a jury could reasonably find for Patterson on the issue of the likelihood of confusion between his marks "World Wrestling Association" and "WWA" and the marks "WWE" and "World Wrestling Entertainment" used by the Defendants. Therefore, summary judgment dismissing Patterson's Lanham Act claims is granted.

## *Advertising Claim*

The Defendants maintain that Patterson's advertising claim fails as a matter of law. Patterson has not responded to the Defendants' contention.

Count Four, which alleges that the Defendants misappropriated Patterson's unique method of advertising involving Patterson's selection and promotion of a collection of wrestlers each possessing a unique persona, fails as a matter of law.

Section 43(a) of the Lanham Act proscribes the use in commerce of a word, name, or symbol in connection with:

> any false designation of origin, false or
> misleading description of fact, or false or misleading
> representation of fact, which –
>
> (A) is likely to cause confusion, or to
> cause mistake, or to deceive as to the affiliation,
> connection, or association of such person with another
> person, or as to the origin, sponsorship, or approval of
> his or her goods, services, or commercial activities by
> another person, or
>
> (B) in commercial advertising or
> promotion, misrepresents the nature, characteristics,
> qualities, or geographic origin of his or her or another
> person's goods, services, or commercial activities.

15 U.S.C. § 1125(a). This section protects against misrepresentations or false statements made in connection with the advertising and marketing of goods or provision of services, misappropriation of the efforts of others, and confusion or likelihood of confusion as to source, sponsorship, or association of goods or services. *See Two Pesos, Inc. v. Taco Cabana*, 505 U.S. 763, 767 (1992).

Despite construing the parties' factual submissions in the light most favorable to Patterson, the Defendants have established that there is no genuine dispute of material fact regarding whether Patterson devised a unique method of advertising. The factual materials before the Court do not include any evidence upon which a reasonable jury could conclude that the Defendants misappropriated a unique method of advertising devised by Patterson. *See Anderson*, 477 U.S. at 248. Therefore, as a matter of law, the Defendants have established that they are entitled to summary judgment dismissing Count Four of Patterson's complaint.

*Patterson's State Law Claim*

Count Five is a claim of trademark infringement under Wis. Stat. § 132.01 *et. seq.* The factors analyzed in assessing the likelihood of confusion under a Wisconsin statutory trademark claim are the same as those applied by the federal courts in this judicial circuit. Therefore, the Court's determination that the Defendants are entitled to summary judgment dismissing Patterson's Lanham Act trademark infringement claims is likewise dispositive of Patterson's state statutory claim. Therefore, Patterson's state law trademark infringement claim is dismissed.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

The Defendants' motion for summary judgment (Docket No. 76) **DISMISSING** the claims of Patterson's complaint is granted.

The matter will proceed on the Defendants' counterclaims against Patterson.

Dated at Milwaukee, Wisconsin this 31st day of January, 2006.

**BY THE COURT**

**s/ Rudolph T. Randa**

_____

**Hon. Rudolph T. Randa**
**Chief Judge**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WORLD WRESTLING ENTERTAINMENT, INC.,

Counterclaimant,

v.                                                    Case No. 03-C-374

ALBERT PATTERSON d/b/a
WORLD WRESTLING ASSOCIATION,
SUPERSTARS OF WRESTLING, INC.,
and d/b/a W.W.A SUPERSTARS,

Counter-defendants.

---

## DECISION AND ORDER

---

### *Background*

Nine motions and a petition and supplemental petition for attorney's fees and

expenses are pending in this action for unfair competition and trademark infringement between

two competitors in the wrestling entertainment field.  This case is set for a final pretrial

conference and a trial during September of this year on the counterclaims of defendant World

Wrestling Entertainment, Inc. ("WWE").  However, among the pending motions, is WWE's

motion to withdraw those counterclaims.  The pending motions and petitions are addressed

herein.

### *Sanctions Related Matters/Motions*

Almost a year ago, this Court issued a decision and order addressing a motion for

sanctions/to compel filed by the defendants WWE and Good Humor Corporation, d/b/a Good

Humor Breyer's Ice Cream ("Good Humor") (collectively "the Defendants"). Three motions were addressed in that decision and order. The Court denied the Defendants' motion (Docket No. 56) as to sanctions and granted, in part, the alternative relief sought compelling discovery to the extent that Patterson was directed to make himself available to the Defendants for five additional hours of deposition time. (Court's August 29, 2005, Decision and Order 12.) The Court stated that the Defendants could submit a petition for an award of reasonable expenses incurred in bringing that motion. (*Id*. at 8 (citing Fed. R. Civ. P. 37(a)(4)(d)) & at 12.)

The Court also granted the Defendants' motions for sanctions for Patterson's violation of the Court's February 8, 2005, Decision and Order (Docket No. 72) and the Defendants' Rule 7.4 expedited non-dispositive motion for entry of an order regarding unopposed motion for sanctions (Docket No. 85). (Court's August 29, 2005, Decision and Order 12.) The Court expressly found that Patterson was in violation of the Court's February 8, 2005, Decision and Order, directing him to respond no later than March 8, 2005, to specified requests in the Defendants' First Request for Production of Documents. (*Id*. at 11.) The Court held that Patterson was subject to the full panoply of possible sanctions under Rule 37(b)(2) of the Federal Rules of Civil Procedure. (*Id*.) The Court's August 29, 2005, Decision and Order included a directive that Patterson's deposition be reconvened for five hours at his expense to address information that he withheld. (*Id*.) The Court also stated that the Defendants could include in their petition a request for a reasonable award of expenses incurred in bringing their motions for sanctions. (*Id*.)

2

On September 9, 2005, the Defendants filed a petition seeking \$54,263.39 in attorney's fees and expenses they incurred bringing their January 21, 2005, motion for sanctions or, in the alternative, to compel, and their April 22, 2005, motion for sanctions (Docket No. 104). In support of their request, the Defendants submitted the affidavit of Curtis B. Krasik ("Krasik") (Docket No. 105), outside counsel for the Defendants. Krasik has been principally responsible for litigating this action on the Defendants' behalf.

On September 20, 2005, Patterson filed a motion seeking sanctions against WWE and for reconsideration of the Court's order imposing sanctions (Docket No. 107). Patterson asserts that the amount sought is excessive, the Defendants' have not verified that the fees and "costs" were necessary under 28 U.S.C. § 1924, and Krasik's affidavit is not based on personal knowledge because he did not review the underlying computer documentation of the entries that he swore were accurate. Specifically, Patterson objects to total photocopying charges of \$2,544.35, computer database research charges of \$8,469.78, and the charge of \$5,750 for videos. Patterson also objects to charges based on work done by M. H. Sepp ("Sepp"), the number of attorney hours expended on the sanctions brief, and the basis for the hourly rate.

Patterson also seeks reconsideration of the Court's August 29, 2005, Decision and Order to the extent it was based on a finding that Patterson failed to comply with the Court's February 8, 2005, Decision and Order. As to his request for reconsideration, Patterson proffers the affidavit of his attorney, Charles Drake Boutwell ("Boutwell"), to establish his good faith compliance with the Court's order. Patterson states that the Defendants' petition for fees and expenses is sanctionable.

3

The Defendants filed a consolidated reply to Patterson's response to their petition for attorney's fees and in opposition to Patterson's motion for sanctions and for reconsideration.

The Defendants also filed a supplemental petition for attorney's fees and expenses incurred in reconvening Patterson's deposition as directed by the Court's August 29, 2005, Decision and Order (Docket No. 124). In his supporting affidavit, Krasik avers that there were $3,986.91 in direct expenses and $6,110.00 in ancillary expenses for a total of $10,097.91 expended in reconvening Patterson's deposition (Docket No. 125).

Patterson asserts that the Defendants' supplemental petition "grossly exaggerate[s]" their fees and expenses. Patterson also objects to the video expense of the deposition, the charge for airfare, lodging and attorney travel time to and from Milwaukee, the 14.20 hours of preparation time for the deposition, and the time expended by A.L. Kunic ("Kunic"). Furthermore, Patterson objects to the charge of $23.50 for investigating the current status of WWE's marks contending that it was unrelated to Patterson's deposition.

Patterson filed a request for leave to file a surreply to the Defendants' petition in support of fees and costs (Docket No. 117). He asserts that the Defendants raised new issues in their reply brief.

### Analysis

At the outset, Patterson's request for leave to file a surreply is denied (Docket No. 117). The factual representations made in the Defendants' reply brief, which Patterson claims are "new issues," are tangential and do not warrant a surreply. Patterson's other arguments

4

regarding 28 U.S.C. § 1924 are not responsive to new arguments raised by the Defendants.

Rather, they are just an effort by Patterson to have the final word.

Before addressing the issues raised, the Court notes that its August 29, 2005,

Decision and Order used the phrase "reasonable expenses." That phrase appears in Rule 37 of

the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 37(a)(4) & 37 (b)(2). In submitting

their expense petitions, the Defendants have used the term "costs," presumably as a synonym

for "expenses." Patterson has also used the term "costs." To avoid confusion, the Court has

substituted the term "expenses," except when addressing Patterson's arguments or legal

authority regarding referring to "costs."

Patterson has presented challenges to the Defendants' initial and supplemental

expense petitions based on statutes relevant to an award of "costs" under Rule 54(d) of the

Federal Rules of Civil Procedure. Patterson relies upon 28 U.S.C. § 1924 which provides:

> **Before any bill of costs is taxed,** the party claiming any
> item of cost or disbursement shall attach thereto an affidavit, made
> by himself or by his duly authorized attorney or agent having
> knowledge of the facts, that such item is correct and has been
> necessarily incurred in the case and that the services for which fees
> have been charged were actually and necessarily performed.

(emphasis added.) "Although 'costs' have an everyday meaning synonymous with 'expenses,'

the concept of taxable costs under Rule 54(d) is more limited." 10 Charles Alan Wright, Arthur

R. Miller & Mary Kay Kane, *Federal Practice & Procedure*, § 2666 (3d ed. 1998). "Costs"

under Rule 54(d) are not equivalent to "expenses," but include only such items as court fees and

witness fees. *See Hairline Creations, Inc. v. Kefalas*, 664 F.2d 652, 655-56 (7th Cir. 1981).

Patterson's argument regarding the applicability of § 1924 to Krasik's affidavit, treats "costs" as a synonym for "expenses." But, Patterson has not established that the Defendants' expense petitions are subject to the requirements of 28 U.S.C. § 1924.

In his motion for sanctions and reconsideration, Patterson seeks sanctions against the Defendants asserting that Krasik's affidavit is false and issues a volley of additional objections to the affidavit. Patterson's objections warrant consideration in the Court's assessment of the proper amount of the award sought. However, Patterson's challenges do not provide a basis for the imposition of sanctions against the Defendants based on the representations in the Krasik affidavit. Therefore, that portion of Patterson's motion which seeks sanctions is denied.

Patterson also requests reconsideration of the Court's prior determination that he failed to comply with the Court's February 8, 2005, Decision and Order. Patterson maintains that he, in good faith, attempted to comply with the Court's order. The supporting Boutwell affidavit describes conversations between Boutwell and Krasik regarding the photocopying of documents, which Boutwell avers occurred prior to the March 8, 2005, production deadline and provides information about the arrangements for the copying of the documents.

Patterson did not file a response to the Defendants' April 22, 2005, motion for sanctions, or to their May 25, 2005, Rule 7.4 expedited non-dispositive motion for entry of an order regarding their unopposed motion for sanctions. Patterson proffers the Boutwell affidavit nearly five months after the motion for sanctions was filed (and 22 days after the issuance of the Court's August 29, 2005, Decision and Order). Patterson has presented no explanation for

6

his delay.    Patterson has not persuaded this Court that it should reconsider its prior determination that Patterson failed to comply with the Court's February 8, 2005, Decision and Order. Therefore, that portion of Patterson's motion which seeks such reconsideration is denied.

With respect to the Defendants' petitions for attorney's fees and costs, the district courts possess wide latitude in fashioning appropriate sanctions and evaluating the reasonableness of the requested attorney's fees. *See Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 739 & n.5 (7th Cir. 1998) (Rule 37 sanctions); *Alexander v. Gerhardt Enter., Inc.*, 40 F.3d 187, 193-94 (7th Cir. 1994) (attorneys' fees). The Court's determination of reasonable attorney's fees under Rule 37 is normally made using the "lodestar" method of *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir. 1999).

Attorney's fees are assigned a "lodestar" amount, "calculated by multiplying the number of hours the attorney reasonably expended on the litigation multiplied by a reasonable hourly rate." *See Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003) (citing *Hensley*, 461 U.S. at 433)). The district court "should exclude from this initial fee calculation hours that were not 'reasonably expended'. . . . Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The fee claimant bears the burden of substantiating the hours worked and the rate claimed. *Estate of Borst v. O'Brien*, 979 F.2d 511, 515 (7th Cir.

7

1992). Once the attorney has done so and submitted a lodestar, the district court may increase

or decrease the amount in light of the *Hensley* factors. *Mathur*, 317 F.3d at 742. These factors

include the time and labor required, the novelty and difficulty of the questions, the skill needed

to perform the legal services properly, the amount involved and results obtained, the time

limitations imposed by the case, and the experience, and reputation and ability of the lawyers.

*See Id.* at 742 n.1. The most important factor is the degree of success obtained. *Spegon v.*

*Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999).

A "concise but clear explanation" should accompany any modification by the

district court of the submitted lodestar. *See Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642,

645 (7th Cir. 1995). "The court may not cut down the requested fees by an arbitrary amount just

because they seem excessive." *Strange v. Monogram Credit Card Bank of Ga.*, 129 F.3d 943,

946 (7th Cir. 1997). The court should include a discussion of whether the attorney's fees

claimed should be reduced with respect to the litigant's unsuccessful claims. *See Spellan*, 59

F.3d at 646.

In their initial petition, the Defendants request an award of $46,280.25 in

attorney's fees incurred in bringing their motions. Krasik avers that the billing rates and

expenses charged by his firm and those associated with local counsel were consistent with and

reasonable for the billing rates generally charged by the two firms for legal work of this nature.

Though billing rates are not specified, the Court has calculated that Krasik affidavit includes

the hourly rates of J. S. McDevitt ("McDevitt") at $500, Krasik at $280, Sepp at $140, A.

8

Lambert ("Lambert") at $165.00, and Kunic at $110. The hourly rate charged by local counsel
was $155.

An attorney's actual billing rate for comparable work is presumptively appropriate
to use as the market rate. *See Mathur*, 317 F.3d at 743. The Defendants have provided the
Court with the actual rates billed by their attorneys (and paid by the Defendants). Patterson has
not rebutted that showing. Consequently, the hourly rates charged in filing and pursuing the
Defendants' motion for sanctions and, in the alternative, to compel, and in the motion for
sanctions are allowed.

Patterson objects to the inclusion of hours for work done by Sepp preparing video
clips and a video brief. He states that such work is clerical work, not legal work and is not
compensable, citing *Spegon*, 175 F.3d at 553. In *Spegon*, the court stated that the relevant
inquiry for requested paralegal fees is "whether the work was sufficiently complex to justify the
efforts of a paralegal, as opposed to an employee at the next rung lower on the pay scale
ladder." *Id*. (citation omitted). The tasks discussed in *Spegon*, as insufficiently complex, were
organizing file folders, document preparation and copying documents. *Id*. Patterson has not
established the challenged work by Sepp is analogous to non-compensable clerical work.

Patterson also maintains that the fees sought by the initial fee petition are
excessive. The Court has reviewed the accompanying billing records and finds that the time
spent on conferences, research, drafting and revising of briefs, and compilation of the video
excerpts was reasonable. However, as calculated by this Court, Krasik devoted 86.95 hours to
drafting and revising the 22-page initial brief in support of the motion to compel or, in the

9

alternative, for sanctions. While the brief is detailed, that amount of time is excessive in light of the time and labor that should have reasonably been expended on drafting and revising that brief. The Court will deduct 16.95 hours of that time and allow 60 hours of the time Krasik spent drafting and revising the brief. *See Strange*, 129 F.3d at 946. Thus, $4,746 (16.95 x $280) is deducted from the claimed $46,280.25 in attorney's fees. The lodestar is $41,534.28. Having further considered that the Defendants partially prevailed in pursuing the subject motions, the Court further reduces the lodestar by twenty percent which reduces the amount of attorney's fees to $33,227.42. *See Spegon*, 175 F.3d at 550.

In their initial petition, the Defendants also claim total expenses of $7,983.14. Krasik avers that because his firm's expenses "incurred in the same billing cycle (research charges, copy charges, postage, etc.) cannot be readily associated with particular projects (except with respect to certain categories of costs as designated on the January and April fees statements)," the Defendants have approximated firm expenses associated with the motions for sanctions based on the relative percentage of firm fees associated with the total firm fees for that month. (Krasik Aff. ¶ 4.) Expenses for local counsel are sought pursuant to local counsel's statement of itemized expenses. (*Id.*)

Relying upon *Wahl v. Carrier Manufacturing Co.*, 511 F.2d 209 (7th Cir. 1975), Patterson objects to the expenses claimed. However, *Wahl* involved an award of "costs" under Rule 54(d) of the Federal Rules of Civil Procedure. *Id.* Such awards are limited to those specified in 28 U.S.C. § 1920. *Id.* Furthermore, before costs may be taxed, the applicant must

10

comply with 28 U.S.C. § 1924 which requires that before costs are taxed, they must be verified by an affidavit that states the items are correct and were necessarily incurred in the case. *Id.* Patterson, however, has not presented any authority that the rulings of *Wahl* are applicable to an award of expenses under Rule 37. Therefore, Patterson's objections premised on *Wahl* to the allocation of expenses on a *pro rata* basis to billing time, and the inclusion charges for telephone calls and postage are not persuasive.

Patterson also objects to the expense sums listed on the monthly statements issued by Krasik's firm (total photocopying charges of $2,544.35, computer database research charges of $8,469.78, and the charge of $5,750 for videos). However, the Defendants are not seeking recovery of those sums from Patterson. They seek a fraction of those expenses. Patterson has not provided any legal authority disallowing Rule 37 expenses because they were *pro rated*. The *pro rata* expense allocation method used by the Defendants is acceptable (although not encouraged.) Therefore, the Defendants' claimed expenses of $7,983.14 in the initial petition are approved.

With respect to the fees and expenses sought under the supplemental petition, Patterson asserts that the Defendants "grossly exaggerate" the amounts. However, Patterson's conclusory statement does not provide a basis for analysis.

In directing that Patterson's deposition be reconvened at his expense, the Court intended to place the Defendants in the position they would have been in if Patterson had "produced the information he withheld," in the first instance. (*See* Court's August 29, 2005, Decision and Order 11.) Krasik, the attorney who conducted the first deposition, appropriately

11

conducted the supplemental deposition. Krasik charged his "standard billing rate" of $300 per hour. (Krasik Aff. Supp. Defs.' Supplemental Pet. for Attn'y's Fees and Expenses Incurred Reconvening Pl.'s Dep. ¶ 3.)  Krasik avers that the billing rates and expenses charged by his firm and those associated with local counsel were consistent with, and reasonable for, the billing rates generally charged by the two firms for legal work of this nature.  (*Id.* at ¶ 6.) Consequently, the hourly rates charged for work related to reconvening Patterson's deposition are approved.

The Court has reviewed the billing records for the work and finds that the time expended was reasonable.  Given Krasik's prior experience in deposing Patterson, the Court finds that Krasik's 14.20 hours of deposition preparation time was reasonable.  Kunic assisted in preparation by gathering materials and documents.    He also confirmed logistical arrangements for the deposition. The amount claimed for these tasks is reasonable and the work does not appear to be clerical. *See Spegon*, 175 F.3d at 553. The Defendants acted reasonably in verifying the status of WWE's registration since that issue was likely to arise during the deposition.  Thus, the hourly rate and 28.8 hours devoted to the reconvened deposition by Krasik's firm are approved. Likewise, the hourly rate and 1.25 hours devoted to the reconvened deposition by local counsel are approved. The total amount of fees awarded is $7,611.00, with the Court finding no reason to increase or decrease the fees under the *Hensley* factors.

With respect to expenses, the first portion of Patterson's deposition was video-recorded. It was reasonable that the reconvened deposition should be likewise recorded.

12

The travel time claimed, airline expenses and lodging expenses were reasonable expenses incurred by the Defendants as a consequence of having to re-depose Patterson. The $2,486.91 in expenses claimed in the supplemental petition are approved. Thus, the Court approves the total $10,097.91 in fees and expenses in the supplemental petition.

*Patterson's Motion to Reconsider the Court's January 31, 2006, Decision and Order Granting Summary Judgment*

Pursuant to Federal Rule of Civil Procedure 59(e), Patterson seeks reconsideration of the Court's January 31, 2006, Decision and Order. (Docket No. 137.) He identifies two aspects of the Court's decision upon which he seeks reconsideration: the likelihood of confusion between World Wrestling Association and World Wrestling Entertainment and the Court's finding regarding laches. Patterson supplies new evidence which he states was not available at the time he filed his response to the Defendants's summary judgment motion.[1]

A motion for reconsideration, or a motion to alter or amend judgment pursuant to Rule 59(e), contemplates three very limited circumstances in federal civil litigation: newly discovered evidence; an intervening change in the controlling law; or a manifest error of law. *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998); *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996); *Moro v. Shell Co.*, 91 F.3d 872, 876 (7th Cir. 1996); *Russell v. Delco Remy Div. of*

---

[1] Patterson has attached: the October 4, 1994, United States Patent and Trademark Office ("PTO") registration issued to Patterson for the service mark "Superstars of Wrestling" and a stylized block letter "S" which abuts the right side of star and a large stylized block letter "W," which abuts the left side of the same star and the January 31, 2006, PTO service mark registration issued to Patterson for "World Wrestling Association" (Ex. R-1); the judgment in *Patterson v. McManus*, Case No. 02-C-0240 (E.D. Wis. Aug. 31, 2005) (Ex. R-2); the December 15, 2005, injunction and the December 19, 2005, judgment entered in *Patterson v. TNA Entm't, LLC*, Case No. 04-C-192 (E.D. Wis.) (Ex. R-3); the PTO March 5, 2005, cancellations for Titan Sports, Inc.'s ("Titan") mark "WWF Superstars" and the vertically stacked block letter logo "WWF" over the block letters "Superstars" (Exs. R-4 & R-5); the August 26, 2003, PTO trademark registration issued to World Wrestling Federation Entertainment for the "World Wrestling Entertainment" (Ex. R-6); and the May 17, 2005, PTO cancellation for the service mark "World Wide Wrestling" held by Jim Crockett Promotions, Inc. (Ex. R-7.)

*Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). Rule 59(e) motions are generally not vehicles to introduce new evidence or advance arguments that could or should have been presented to the district court prior to judgment. *Moro*, 91 F.3d at 876; *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987). A "manifest error" is not demonstrated by the disappointment of the losing party. It is the "'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F.Supp. 1063, 1069 [N.D. Ill. 1997]).

The Court's January 31, 2006, Decision and Order, noted Patterson's recent documentary submissions filed with a letter on January 10, 2006, but declined to consider them. (Court's January 31, 2006, Decision and Order 3.) The Court relied upon the six-month period of time which had passed since the briefing of the summary judgment motion and noted that its consideration of the parties' voluminous summary judgment motion was well into its final stages when it received Patterson's filing. (*Id.*)

The Court previously concluded that it was too late for Patterson to supplement his filing with new evidence. Such evidence included information on the status of Patterson's "World Wrestling Association" trademark application; the judgment in *McManus*, Case No. 02-C-0240 (E.D. Wis. Aug. 31, 2005); the December 15, 2005, injunction and the December 19, 2005, judgment entered in *TNA Entertainment, LLC*, Case No. 04-C-192 (E.D. Wis.); and the two March 5, 2005, cancellations of Titan's "WWF Superstars" mark.[2] Patterson has failed to show that the Court's determination was a manifest error of law. *See Oto*, 224 F.3d at 606.

---

[2] Parenthetically, the Court notes that the court docket in Case No. 04-C-0192, indicates that on March 10, 2006, Magistrate Judge William E. Callahan entered a decision and order vacating that injunction and judgment.

Without explanation, Patterson also proffers additional PTO documents which predate the June 2, 2005, submission of his response to the Defendants' summary judgment motion and his January 1, 2006, letter proffering additional exhibits. (*See* Pl.'s Mot. to Recons. Jan. 31, 2006, Granting Summ. J. to Defs., Ex. R-1, R-6, R-7.) Patterson may not use his motion for reconsideration to introduce new evidence that he could have presented earlier. *See Oto*, 224 F.3d at 606.

The only "new" evidence Patterson submits is the formal certificate of the PTO service mark registration for "World Wrestling Association" issued on January 31, 2006. However, Patterson's January 10, 2006, letter advised the Court that Patterson is the registered owner of the mark and that he expected to receive the formal certificate on January 31, 2006. Thus, the substance of the evidence was previously before the Court and Patterson has not established manifest injustice of law in the Court's determination. *See Oto*, 224 F.3d at 606.

Moreover, as previously observed, the PTO criterion differs from those used to establish "likelihood of confusion" under the governing case law of this circuit. (Court's January 31, 2006, Decision and Order 41-46.) Additionally, the PTO's issuance of the registration undermines Patterson's assertion in this litigation that there is a likelihood of confusion between "World Wrestling Association" and the Defendants' "WWE" and "World Wrestling Entertainment" marks.

Patterson also presents arguments that address the factors relevant to the likelihood of confusion under *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). Previously, in discussing the issue, the Court noted that Patterson had not addressed the

factors. (Court's January 31, 2006, Decision and Order 43.) Now, by means of a motion for reconsideration, Patterson may not advance the arguments that he could have presented to the Court. *See Moro*, 91 F.3d at 876.

Likewise, Patterson cites *Saint-Gobain Abrasive, Inc. v. Unnova Industrial Automation Systems, Inc.*, 66 U.S.P.Q. 2d 1355 (T.T.A.B. 2003) with respect to the Defendants' claim of laches. While Patterson opposed the Defendants' claim of laches, he did not raise such contention or cite the pre-existing *Saint-Gobain* decision. (*See* Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. 25-26.) Patterson may not raise the argument by Rule 59(e) motion. *See Moro*, 91 F.3d at 876.

Patterson has not provided a proper basis for reconsideration of the Court's summary judgment decision. Therefore, Patterson's motion for reconsideration of the Court's January 31, 2006, Decision and Order granting summary judgment is denied.

### *WWE's Motion to Withdraw Counterclaims and Patterson's Motion to Strike WWE's Reply*

WWE filed a motion to withdraw its counterclaims pursuant to Federal Rule of Civil Procedure 41(a), without prejudice. (Docket No. 141.) WWE's motion to voluntarily withdraw its counterclaims is based on specified conditions. Patterson did not file a response brief. WWE filed a reply brief.

Patterson filed a motion to strike WWE's reply in support of its motion to withdraw counterclaims. (Docket No. 148.) Patterson states that he did not respond to the motion to withdraw counterclaims and, therefore, WWE could not file a reply.

In response, WWE concedes that its reply was not technically a reply since

16

Patterson's rejoinder to its motion was presented in Patterson's reply brief on his motion for reconsideration of the Court's January 31, 2006, Decision and Order. WWE requests that, to the extent the Court determines that WWE did not have a right to file a reply on its motion to withdraw its counterclaims, the brief be treated as a surreply to Patterson's motion for reconsideration of the January 31, 2006, Decision and Order and that WWE be given leave to file it as such. (WWE's Resp. to Mot. to Strike Reply in Supp. Mot. Withdraw Countercl. Without Prejudice at 1-2.)

Patterson's motion to strike WWE's reply in support of its motion to withdraw counterclaims is granted. Patterson did not file a response brief to WWE's motion to withdraw its counterclaims. Therefore, WWE was not entitled to file a "reply brief." (*See* Civil L.R. 7.1(b)(E.D. Wis.).) Furthermore, WWE's request in its response brief to the instant motion, that its reply brief be treated as a surreply to Patterson's motion for reconsideration, is not a motion, and is denied on that ground. WWE's surreply also responds to contentions that are superfluous to the summary judgment reconsideration motion.

Federal Rule of Civil Procedure 41(a)(2) is applicable to WWE's motion to withdraw its counterclaims. Rule 41(a)(2) provides that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice." Fed. R. Civ. P. 41(a)(2).

WWE has four pending counterclaims: abuse of process (Count One ); unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count Two); tortious

17

interference with contract (Count Three); and, trade libel (Count Four). (Defs.' Second Am. Answer and Countercls.) WWE's motion to withdraw its counterclaims is contingent upon the denial of Patterson's motion for reconsideration of the Court's January 31, 2006, Decision and Order granting the Defendants' motion for summary judgment dismissing Patterson's claims, and the grant of the Defendants' petition and supplemental petition for sanctions. WWE requests that a specific monetary sanction be imposed upon Patterson prior to the Court's entry of final judgment in this action. WWE further requests that it be granted leave to reinstate its counterclaims in the event Patterson is successful in any appeal of this action.

In this Decision and Order, the Court has denied Patterson's motion for reconsideration of its January 31, 2006, Decision and Order. The Court has also ordered, upon consideration of the Defendants' petition and supplemental petition for attorney's fees and expenses, a specific monetary sanction against Patterson. Furthermore, having considered the tumultuous and contentious history of this action, the Court also grants WWE's request that it be allowed to reinstate its counterclaims in the event Patterson is successful in any appeal of this action. Therefore, the Court grants WWE's motion to withdraw its counterclaims upon the specified conditions.

### *Patterson's Discovery Related Motions*

Patterson filed a two-part motion to reopen discovery to take depositions of Linda McMahon ("McMahon") and Edward Kaufman ("Kaufman") and to bifurcate the trial and reserve the damages issue for determination by the Court after the trial on the merits of Patterson's claims. (Docket No. 113). Patterson also filed a motion to compel the Defendants

18

to answer his requests to admit, propounded on September 23, 2005. (Docket No. 120.) Patterson concedes that discovery was closed at the time that the requests to admit were propounded. However, he states that the purposes of the request to admit are to authenticate documents for trial and to save time at trial.

Patterson's discovery related motions were filed after the discovery deadline. Patterson has not shown "good cause" for modification of the Court's scheduling order as required by Rule 16(b) of the Federal Rules of Civil Procedure. Furthermore, given the current posture of the case, there will be no authentication of exhibits and no need for a separate trial on damages associated with Patterson's claims.

Therefore, Patterson's motion to reopen discovery to take depositions of McMahon and Kaufman and to bifurcate trial and reserve damages issue for the Court is denied. Patterson's motion to compel the Defendants to answer his requests to admit is also denied.

### Motions in Limine

Patterson filed two motions in limine. (Docket Nos. 138 & 139.) There will be no trial of this matter. Therefore, the motions are moot and are denied.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Patterson's motion seeking sanctions against WWE and for reconsideration of the Court's order imposing sanctions (Docket No. 107) is **DENIED,**

Patterson's motion for leave to file a surreply to the Defendants' petition in support of fees and costs (Docket No. 117) is **DENIED,**

19

The Defendants' petition for attorney's fees and costs (Docket No. 104) is **GRANTED** in the amount of $41,210.56 and **DENIED** in all other respects. Patterson **SHALL** pay such amount to the Defendants **no later than September 5, 2006.**

The Defendants' supplemental petition for attorney's fees and costs (Docket No. 124) is **GRANTED** in the amount of $10,097.91. Patterson **SHALL** pay such amount to the Defendants **no later than September 5, 2006.**

Patterson's Motion to Reconsider the Court's January 31, 2006, Decision and Order Granting Summary Judgment (Docket No. 137) is **DENIED,**

Patterson's motion to strike WWE's reply in support of its motion to withdraw counterclaims (Docket No. 148) is **GRANTED,**

WWE's motion to voluntarily withdraw its counterclaims without prejudice (Docket No. 141) is **GRANTED.** WWE may reinstate its counterclaims in the event Patterson is successful in any appeal of this action.

Patterson's motion to reopen discovery to take depositions of McMahon and Kaufman and to bifurcate trial and leave damages issue for the Court (Docket No. 113) is **DENIED,**

Patterson's motion to compel the Defendants to answer his requests to admit (Docket No. 120) is **DENIED,**

Patterson's motions in limine (Docket Nos. 138 & 139) are **DENIED** as moot,

20

This action is **DISMISSED**, and

The Clerk of Court **SHALL** enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 17th day of August, 2006.

**BY THE COURT**

s/ Rudolph T. Randa
**Hon. Rudolph T. Randa**
**Chief Judge**

21

AO 450 (Rev. 5/85) Judgment in a Civil Case ®

# United States District Court

## EASTERN DISTRICT OF WISCONSIN

**JUDGMENT IN A CIVIL CASE**

**ALBERT PATTERSON d/b/a
WORLD WRESTLING ASSOCIATION,
SUPERSTARS OF WRESTLING, INC.
and d/b/a W.W.A. SUPERSTARS,**

        Plaintiff,

      V.                         CASE NUMBER: **03-C-374**

**WORLD WRESTLING ENTERTAINMENT, INC.;** and
**GOOD HUMOR CORPORATION,
d/b/a Good Humor Breyer's Ice Cream;**

        Defendants.


    and

**WORLD WRESTLING ENTERTAINMENT, INC.**

        Counterclaimant,

      V.

**ALBERT PATTERSON, d/b/a
WORLD WRESTLING ASSOCIATION,
SUPERSTARS OF WRESTLING, INC.
and d/b/a W.W.A. SUPERSTARS,**

        Counter-defendant.

☐  **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒  **Decision by Court.** This action came on for consideration and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that the motion of defendants World Wrestling Entertainment, Inc. and Good Humor Corporation for summary judgment dismissing Albert Patterson's complaint is GRANTED.

Albert Patterson's infringement claims against the defendants based on their use of "WWF" and "World Wrestling Federation" are barred by res judicata.

Albert Patterson's infringement claims against the defendants based on their use of "WWF Superstars" and "WWE Superstars" are not barred by res judicata.

Albert Patterson's infringement claims against the defendants based on their use of "WWE" and "World Wrestling Entertainment" are not barred by judicial estoppel.

Albert Patterson's infringement claims against the defendants based on their use of "World Wrestling Federation," "WWF," and "WWF Superstars" are barred by laches.

Albert Patterson's claims arising out of the defendants' wrestling business's use of "WWF," "World Wrestling Federation," and "WWF Superstars" marks are barred by laches.

Albert Patterson's claims are fundamentally inconsistent with both resolution of the 1990 action and his course of conduct over the past 20 years. Summary judgment dismissing Albert Patterson's Lanham Act claims is granted. Albert Patterson has not proffered any admissible evidence of actual confusion.

Count Four, which alleges that the defendants misappropriated Albert Patterson's unique method of advertising involving Albert Patterson's selection and promotion of a collection of wrestlers each possessing a unique persona, fails as a matter of law.

The Court's determination that the defendants are entitled to summary judgment dismissing Albert Patterson's Lanham Act trademark infringement claims is likewise dispositive of Albert Patterson's state statutory claim. Therefore, Albert Patterson's fifth claim for state law trademark infringement is dismissed.

World Wrestling Entertainment, Inc.'s motion to voluntarily withdraw its counterclaims without prejudice is granted. World Wrestling Entertainment, Inc. may reinstate its counterclaims in the event Albert Peterson is successful in any appeal of this action.

Albert Peterson's motion seeking sanctions against World Wrestling Entertainment, Inc. and for reconsideration of the Court's order imposing sanctions is denied.

The defendants' are awarded attorney's fees and costs in the amount of $41,210.56 which shall be paid to the defendants no later than September 5, 2006.

The defendants' supplemental petition for attorney's fees and costs is granted in the amount of $10,097.91. Albert Patterson shall pay such amount to the defendants no later than September 5, 2006.

This action is hereby DISMISSED.


_____August 21, 2006_____            ___SOFRON B. NEDILSKY___
Date                                        Clerk


                                            __s/ Linda M. Zik_____
                                            (By) Deputy Clerk


Approved as to form:

s/ Rudolph T. Randa_____
Hon. Rudolph T. Randa, Chief Judge


August 21, 2006_____
Date

# United States District Court
## Eastern District of Wisconsin (Milwaukee)
### CIVIL DOCKET FOR CASE #: 2:03-cv-00374-RTR
#### Internal Use Only

*06-3555*

| | |
|---|---|
| Patterson v. World Wrestling Entertainment Inc et al | Date Filed: 04/29/2003 |
| Assigned to: Chief Judge Rudolph T Randa | Date Terminated: 08/21/2006 |
| Cause: 15:1051 Trademark Infringement | Jury Demand: Both |
| | Nature of Suit: 840 Trademark |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Albert Patterson**
*doing business as*
World Wrestling Association Superstars of
Wrestling Inc

represented by **Charles D Boutwell**
Boutwell Law Office
3075 Plum Island Dr
Northbrook, IL 60062
847-272-2126
Fax: 847-272-2275
Email: dboutwell333@yahoo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**World Wrestling Entertainment Inc**

represented by **Curtis B Krasik**
Kirkpatrick & Lockhart Nicholson Graham
LLP
Henry W Oliver Bldg
535 Smithfield St
Pittsburgh, PA 15222-2312
412-355-6500
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jerry S McDevitt**
Kirkpatrick & Lockhart Nicholson Graham
LLP
Henry W Oliver Bldg
535 Smithfield St
Pittsburgh, PA 15222-2312
412-355-6500
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Julie R Fenstermaker**
Kirkpatrick & Lockhart Nicholson Graham
LLP
Henry W Oliver Bldg
535 Smithfield St

Pittsburgh, PA 15222-2312
412-355-6500
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shepard A Davis**
Burton & Davis
611 N Broadway - Ste 335
Milwaukee, WI 53202
414-224-8000
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Good Humor Corp**                    represented by **Curtis B Krasik**
*doing business as*                                   (See above for address)
Good Humor Breyers Ice Cream                          *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Jerry S McDevitt**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Julie R Fenstermaker**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Shepard A Davis**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/29/2003 | 🔵1 | COMPLAINT with jury demand (Summons(es) issued); Consent Forms Distributed for Magistrate Judge Goodstein (Filing fee $ 150) (vlh, ) |
| 04/29/2003 | 🔵2 | CERTIFICATE of Interest by Plaintiff Albert Patterson (vlh, ) |
| 04/29/2003 | 🔵3 | NOTICE of Appearance by Charles D Boutwell on behalf of Albert Patterson (vlh, ) |
| 05/05/2003 | 🔵4 | SUMMONS Returned Executed by Albert Patterson. CSC Lawyers, Robin Swadley, on behalf of World Wrestling Entertainment Inc served on 5/2/2003. (Entered: 05/07/2003) |
| 05/05/2003 | 🔵5 | SUMMONS Returned Executed by Albert Patterson. Prentice Hall, Robin Swadley on behalf of Good Humor Corp served on 5/2/2003. (jll, ) (Entered: 05/07/2003) |
| 06/20/2003 | 🔵6 | (Notice of) MOTION to Dismiss by Defts Good Humor Corp, World Wrestling Entertainment Inc. (djd) |
| 06/20/2003 | 🔵7 | BRIEF by defts in Support of [6] MOTION to Dismiss (djd) |

| 06/20/2003 | 🔵8 | CERTIFICATE of Interest by Defts Good Humor Corp, World Wrestling Entertainment Inc (djd) |
|---|---|---|
| 07/08/2003 | 🔵9 | CONSENT to Jurisdiction by US Magistrate Judge by Plaintiff Albert Patterson (jll, ) |
| 07/16/2003 | 🔵10 | BRIEF in Opposition to [6] MOTION to Dismiss filed by Plaintiff Albert Patterson. (kmm, ) (Entered: 07/17/2003) |
| 07/28/2003 | 🔵11 | REFUSAL of Consent to Jurisdiction by US Magistrate Judge by Defendants (jll, ) |
| 07/28/2003 | 🔵12 | Notice of MOTION to Dismiss and MOTION for Sanctions ; Oral argument requested by Defendants. (jll, ) |
| 07/28/2003 | 🔵13 | BRIEF in Support re [12] MOTION to Dismiss and MOTION for Sanctions filed by Defendants (jll, ). |
| 07/28/2003 | 🔵14 | APPENDIX - Volume I - in support of motion for sanctions by all defendants (jll, ) |
| 07/28/2003 | 🔵15 | APPENDIX - Volume II - in support of motion for sanctions by all defendants (jll, ) |
| 08/01/2003 | 🔵16 | REPLY BRIEF in Support re [6] defendants' MOTION to Dismiss ; certificate of service filed by Defendants. (jll, ) (Entered: 08/04/2003) |
| 08/18/2003 | 🔵17 | MOTION for Leave to File a sur-reply memorandum by Plaintiff Albert Patterson. (jll, ) (Entered: 08/19/2003) |
| 08/18/2003 | 🔵18 | SUR-REPLY to defendants' motion to dismiss; attachments filed by Plaintiff Albert Patterson. (jll, ) (Entered: 08/19/2003) |
| 08/19/2003 | 🔵19 | BRIEF in Opposition re [17] plaintiff's MOTION for Leave to File a sur-reply ; certificate of service filed by Defendants. (jll, ) |
| 10/08/2003 | 🔵20 | MOTION for Order granting defendants' motion for sanctions by Defendant World Wrestling Entertainment Inc. (jll, ) (Entered: 10/09/2003) |
| 10/08/2003 | 🔵21 | BRIEF in Support re [20] MOTION for Order granting motion for entry of unopposed motion for sanctions; certificate of service filed by Defendant World Wrestling Entertainment Inc. (jll, ) (Entered: 10/09/2003) |
| 11/03/2003 | 🔵22 | BRIEF in Opposition re [12] MOTION to Dismiss MOTION for Sanctions ; certificate of service filed by Albert Patterson. (jll, ) (Entered: 11/04/2003) |
| 11/03/2003 | 🔵23 | MOTION for Leave to File response to motion for sanctions; certificate of service by Albert Patterson. (jll, ) (Entered: 11/04/2003) |
| 11/06/2003 | 🔵24 | BRIEF in Opposition re [23] MOTION for Leave to File response to motion for sanctions; certificate of service filed by Good Humor Corp, World Wrestling Entertainment Inc. (jll, ) (Entered: 11/07/2003) |
| 03/29/2004 | 🔵25 | DECISION AND ORDER signed by Judge Rudolph T Randa on 3/29/04 denying [6] defendants' Motion to Dismiss, denying [12] defendants' Motion to Dismiss, denying [12] defendants' Motion for Sanctions, granting [17] Patterson's Motion for Leave to File a sur-reply, denying [20] defendants' Motion for Order granting defendants' motion for sanctions, denying [23] Patterson's Motion for Leave to File a response to the defendants' motion for sanctions; the defendants shall file an answer to the complaint within 20 days of the date of this Order; a telephonic scheduling conference is scheduled for 5/25/04 at 9:30. (cc: all counsel) (jld, ) |
| 03/29/2004 | 🔵 | Set Hearings: Scheduling Conference call set for 5/25/2004 at 09:30 AM before Chief Judge Rudolph T Randa. (jld, ) |

| 04/19/2004 | 26 | ANSWER to Complaint AND COUNTERCLAIMS against plaintiffs with Jury Demand by all defendants. (jld, ) (Entered: 04/20/2004) |
|---|---|---|
| 04/19/2004 | 27 | CERTIFICATE OF SERVICE by Good Humor Corp, World Wrestling Entertainment Inc (jld, ) (Entered: 04/20/2004) |
| 05/10/2004 | 28 | MOTION to Dismiss counter claims; notice of filing by Albert Patterson. (jld, ) |
| 05/17/2004 | 29 | REPORT of Rule 26(f) Plan ; certificate of service by all parties (jld, ) (Entered: 05/18/2004) |
| 05/25/2004 | 30 | Minute Entry for proceedings held before Judge Rudolph T Randa : Telephone Scheduling Conference held on 5/25/2004. Amended Pleadings due by 7/24/2004. Discovery due by 11/30/2004. Plaintiffs Expert Witness List due by 11/30/2004. Defendants Expert Witness List due by 2/11/2005. Motions due by 5/1/2005. Final Pretrial Conference set for 8/12/2005 at 10:00 AM. Jury Trial set for 8/12/2005 at 09:00 AM before Chief Judge Rudolph T Randa. (kmm, ) (Entered: 05/26/2004) |
| 05/25/2004 | 31 | SCHEDULING ORDER: signed by Judge Rudolph T Randa on 5/25/04. (cc: all counsel)(kmm, ) (Entered: 05/26/2004) |
| 06/01/2004 | 32 | BRIEF in Opposition re [28] MOTION to Dismiss Counterclaims filed by World Wrestling Entertainment Inc. (jld, ) (Entered: 06/03/2004) |
| 06/14/2004 | 33 | REPLY BRIEF in Support re [28] MOTION to Dismiss counter claims; certificate of service filed by Albert Patterson. (jld, ) |
| 07/21/2004 | 34 | MOTION for Protective Order by Good Humor Corp, World Wrestling Entertainment Inc. (jld, ) (Entered: 07/22/2004) |
| 07/21/2004 | 36 | CERTIFICATION pursuant to Civl L.R. 37.1 by Good Humor Corp, World Wrestling Entertainment Inc (jld, ) (Entered: 07/22/2004) |
| 07/21/2004 | 37 | CERTIFICATE OF SERVICE by Good Humor Corp, World Wrestling Entertainment Inc (jld, ) (Entered: 07/22/2004) |
| 07/22/2004 | 35 | BRIEF in Support re [34] MOTION for Protective Order filed by Good Humor Corp, World Wrestling Entertainment Inc. (jld, ) |
| 07/22/2004 | 38 | ANSWER to Complaint AND COUNTERCLAIM against plaintiff with Jury Demand ; certificate of service by Good Humor Corp, World Wrestling Entertainment Inc. (jld, ) |
| 08/09/2004 | 39 | Counter-defendant's MOTION to strike and MOTION to Dismiss amended counter claims ; certificate of service; attachments by Albert Patterson. (jld, ) |
| 08/09/2004 | 40 | RESPONSE in Opposition re [34] MOTION for Protective Order ; certificate of service filed by Albert Patterson. (jld, ) |
| 08/09/2004 | 41 | NOTICE of filing by Albert Patterson (jld, ) |
| 08/12/2004 | 42 | MOTION to Compel responses to interrogatories and requests for documents by Good Humor Corp and World Wrestling Entertainment Inc. (kmm, ) (Entered: 08/13/2004) |
| 08/12/2004 | 43 | BRIEF in Support of [42] MOTION to Compel filed by Good Humor Corp and World Wrestling Entertainment Inc. (kmm, ) (Entered: 08/13/2004) |
| 08/12/2004 | 44 | CERTIFICATION pursuant to Civil L.R. 37.1 filed by Good Humor Corp and World Wrestling Entertainment Inc. (kmm, ) (Entered: 08/13/2004) |
| 08/25/2004 | 45 | REPLY BRIEF in Support re [34] MOTION for Protective Order filed by Good Humor Corp, World Wrestling Entertainment Inc. (cms, ) (Entered: 08/26/2004) |

| 08/25/2004 | ☉46 | CERTIFICATE OF SERVICE by Good Humor Corp, World Wrestling Entertainment Inc (cms, ) (Entered: 08/26/2004) |
|---|---|---|
| 09/02/2004 | ☉47 | BRIEF in Opposition re [39] MOTION to Dismiss amended counterclaims, MOTION to Strike ; certificate of service filed by World Wrestling Entertainment Inc. (jld, ) (Entered: 09/03/2004) |
| 09/17/2004 | ☉48 | REPLY BRIEF in Support re [28] MOTION to Dismiss counter claims; certificate of service filed by Albert Patterson. (jld, ) |
| 11/10/2004 | ☉49 | MOTION for Protective Order ; certificate of service by Albert Patterson. (jld, ) (Entered: 11/12/2004) |
| 11/10/2004 | ☉50 | ORDER signed by Judge Rudolph T Randa on November 10, 2004 denying 49 Motion for Protective Order . (cc: all counsel) (Randa, Rudolph) (Entered: 11/12/2004) |
| 11/17/2004 | ☉51 | MOTION to Compel responses to plaintiff's first set of interrogatories and first set of requests to produce documents; certificate of service; attachments by Albert Patterson. (jld, ) |
| 11/17/2004 | ☉52 | NOTICE of filing motion by Albert Patterson (jld, ) |
| 11/22/2004 | ☉53 | MOTION to Compel production of documents responsive to plaintiff's second set of requests to produce documents; attachments by Albert Patterson. (jld, ) |
| 11/22/2004 | ☉54 | CERTIFICATE OF SERVICE by Albert Patterson (jld, ) |
| 12/13/2004 | ☉55 | BRIEF in Opposition re [51] MOTION to Compel responses to plaintiff's first set of interrogatories and first set of requets to produce documents, and [53] MOTION to Compel responses to plaintiff's second set of requests to produce documents filed by Good Humor Corp, World Wrestling Entertainment Inc. (Attachments: # 1 Cover Letter)(jld, ) |
| 01/21/2005 | ☉56 | MOTION for Sanctions or, in the alternative, MOTION to Compel ; certificate of service, by World Wrestling Entertainment Inc, Good Humor Corp. FILED UNDER SEAL (jld, ) (Entered: 01/24/2005) |
| 01/21/2005 | ☉57 | BRIEF in Support re [56] MOTION for Sanctions or, in the alternative, MOTION to Compel; certificate of service filed by World Wrestling Entertainment Inc, Good Humor Corp. FILED UNDER SEAL (jld, ) (Entered: 01/24/2005) |
| 01/21/2005 | ☉58 | APPENDIX in support of defendants' motion for sanctions or, in the alternative, motion to compel, by World Wrestling Entertainment Inc, Good Humor Corp FILED UNDER SEAL (jld, ) (Entered: 01/24/2005) |
| 01/21/2005 | ☉59 | CERTIFICATION pursuant to Civil LR 37.1, certificate of service, by World Wrestling Entertainment Inc, Good Humor Corp FILED UNDER SEAL (jld, ) (Entered: 01/24/2005) |
| 01/21/2005 | ☉60 | CD VIDEO BRIEF filed by World Wrestling Entertainment Inc, Good Humor Corp. FILED UNDER SEAL (jld, ) (Entered: 01/24/2005) |
| 01/21/2005 | ☉61 | LETTER re sealed filings, from Shepard A. Davis (jld, ) (Entered: 01/24/2005) |
| 02/08/2005 | ☉62 | ORDER signed by Judge Rudolph T Randa on February 8, 2005. Granting [34] Motion for Protective Order; the defendants shall submit a revised proposed protective order consistent with this order on or before 02/22/2005. Denying [39] Motion to Dismiss, granting [39] Motion to Strike to the extent that the term "inter alia" is struck from paragraph 48 of the amended answer and counterclaims; WWE shall file a second amended counterclaim omitting the term "inter alia" on or before 02/22/2005. Granting |

| | | |
|---|---|---|
| | | in part and denying in part [42] Motion to Compel; Patterson shall provide such information to the defendants no later than 03/08/2005. Denying [51] Motion to Compel. Denying [53] Motion to Compel. Finding as moot and therefore denying [28] Motion to Dismiss. (cc: via US mail to all counsel) (Randa, Rudolph) |
| 02/22/2005 | 🌐<u>67</u> | LETTER re filings, from Shepard A Davis (jld, ) (Entered: 02/23/2005) |
| 02/22/2005 | 🌐<u>68</u> | Second Amended ANSWER to Complaint AND COUNTERCLAIMS against plaintiff with Jury Demand; certificate of service, by World Wrestling Entertainment Inc, Good Humor Corp. (jld, ) (Entered: 02/23/2005) |
| 02/23/2005 | 🌐<u>63</u> | RESPONSE to Motion re [56] MOTION to Compel MOTION for Sanctions filed by Albert Patterson. (jld, ) |
| 02/23/2005 | 🌐<u>64</u> | MOTION for Leave to File plaintiff's response to defendant's motion for sanctions or in the alternative motion to compel instanter; certificate of service by Albert Patterson. (jld, ) |
| 02/23/2005 | 🌐<u>65</u> | Volume I EXHIBITS A through J, by Albert Patterson. (jld, ) |
| 02/23/2005 | 🌐<u>66</u> | Volume II EXHIBITS K through R, by Albert Patterson. (jld, ) |
| 02/24/2005 | 🌐 | MARGIN ORDER signed by Judge Rudolph T Randa on 2/24/2005 granting <u>64</u> Plaintiff's Motion for Leave to File Instanter. (cc: all counsel - via US Mail to attorneys Charles D Boutwell, Shepard A. Davis, Curtis B Krasik and Julie R Fenstermaker) (Randa, Rudolph) |
| 02/24/2005 | 🌐<u>69</u> | PROTECTIVE ORDER signed by Judge Rudolph T Randa on 2/24/05. (cc: all counsel)(jld, ) |
| 03/07/2005 | 🌐<u>70</u> | Counter defendant's ANSWER and affirmative defenses to the second amended Counterclaims; certificate of service, by Albert Patterson. (jld, ) (Entered: 03/08/2005) |
| 03/09/2005 | 🌐<u>71</u> | REPLY BRIEF in Support re [56] MOTION to Compel or, in the alternative, MOTION for Sanctions filed by World Wrestling Entertainment Inc, Good Humor Corp. (Attachments: # <u>1</u> Certificate of service# <u>2</u> Cover Letter)(jld, ) |
| 04/22/2005 | 🌐<u>72</u> | MOTION for Sanctions for plaintiff's violation of the Court's 2/8/05 Decision and Order, by World Wrestling Entertainment Inc, Good Humor Corp. (jld, ) (Entered: 04/25/2005) |
| 04/22/2005 | 🌐<u>73</u> | BRIEF in Support re <u>72</u> MOTION for Sanctions for plaintiff's violation of the Court's 2/8/05 Decision and Order, filed by World Wrestling Entertainment Inc, Good Humor Corp. (jld, ) (Entered: 04/25/2005) |
| 04/22/2005 | 🌐<u>74</u> | Rule 37.1 CERTIFICATION by World Wrestling Entertainment Inc, Good Humor Corp (jld, ) (Entered: 04/25/2005) |
| 04/22/2005 | 🌐<u>75</u> | CERTIFICATE OF SERVICE by World Wrestling Entertainment Inc, Good Humor Corp (Attachments: # <u>1</u> Cover Letter)(jld, ) (Entered: 04/25/2005) |
| 05/02/2005 | 🌐<u>76</u> | MOTION for Summary Judgment by all defendants. (vlh, ) |
| 05/02/2005 | 🌐<u>77</u> | Proposed Findings of Fact by all defendants. (vlh, ) |
| 05/02/2005 | 🌐<u>78</u> | BRIEF in Support of [76] MOTION for Summary Judgment filed by all defendants. (vlh, ) |
| 05/02/2005 | 🌐<u>79</u> | Defendants' APPENDIX consisting of 1 envelope sealed documents (vlh, ) Modified on 5/2/2005 (vlh, ). Modified on 5/3/2005 to delete notation that original was sent to chambers (vlh, ). |

| | | |
|---|---|---|
| 05/02/2005 | ⊜80 | Defendants' APPENDIX (Vol. 1) consisting of 1 binder of exhibits (vlh, ) Modified on 5/3/2005 to delete notation that it was sent to chambers. (vlh, ). |
| 05/02/2005 | ⊜81 | Defendants' APPENDIX (Vol. 2) consisting of 1 binder of videotapes (FORWARDED TO JUDGE'S CHAMBERS.)(vlh, ) |
| 05/02/2005 | ⊜82 | Defendants' APPENDIX (Vol. 3) consisting of 1 binder of videotapes (FORWARDED TO JUDGE'S CHAMBERS._ (vlh, ) |
| 05/02/2005 | ⊜83 | Defendants' APPENDIX (Vol. 4) consisting of 1 binder of videotapes (FORWARDED TO JUDGE'S CHAMBERS.) (vlh, ) |
| 05/02/2005 | ⊜84 | Defendants' APPENDIX (Vol. 5) consisting of 1 binder of videotapes (FORWARDED TO JUDGE'S CHAMBERS.)(vlh, ) |
| 05/25/2005 | ⊜85 | Rule 7.4 MOTION for entry of order regarding defendants' unopposed motion for sanctions (vlh, ) (Entered: 05/26/2005) |
| 06/02/2005 | ⊜86 | BRIEF in Opposition re [76] MOTION for Summary Judgment filed by Albert Patterson. (jld, ) (Entered: 06/03/2005) |
| 06/02/2005 | ⊜87 | RESPONSE to defendant's proposed findings of fact in support of defendant's motion for summary judgment, filed by Albert Patterson. (jld, ) (Entered: 06/03/2005) |
| 06/02/2005 | ⊜88 | STATEMENT OF FACTS in opposition to defendant's motion for summary judgment, by Albert Patterson (jld, ) (Entered: 06/03/2005) |
| 06/02/2005 | ⊜89 | EXHIBITS 1-12 (Volume I of VI) in opposition to defendant's motion for summary judgment, by Albert Patterson. (jld, ) (Entered: 06/03/2005) |
| 06/02/2005 | ⊜90 | EXHIBITS 13-18 (Volumne II of VI) in opposition to defendant's motion for summary judgment, by Albert Patterson. (jld, ) (Entered: 06/03/2005) |
| 06/02/2005 | ⊜91 | EXHIBITS 19-39 (Volume III of VI) in opposition to defendant's motion for summary judgment, by Albert Patterson. (jld, ) (Entered: 06/03/2005) |
| 06/02/2005 | ⊜92 | EXHIBITS 40-45 (Volume IV of VI) in opposition to defendant's motion for summary judgment, by Albert Patterson. (jld, ) (Entered: 06/03/2005) |
| 06/02/2005 | ⊜93 | EXHIBITS 46-79 (Volume V of VI) in opposition to defendant's motion for summary judgment, by Albert Patterson. (jld, ) (Entered: 06/03/2005) |
| 06/02/2005 | ⊜94 | EXHIBITS 80-83 (Volume VI of VI) in opposition to defendant's motion for summary judgment, by Albert Patterson. (jld, ) (Entered: 06/03/2005) |
| 06/20/2005 | ⊜95 | REPLY BRIEF in Support re [76] MOTION for Summary Judgment filed by World Wrestling Entertainment Inc, Good Humor Corp. (cms, ) (Entered: 06/21/2005) |
| 06/20/2005 | ⊜96 | CERTIFICATE OF SERVICE by World Wrestling Entertainment Inc, Good Humor Corp. (cms, ) (Entered: 06/21/2005) |
| 08/01/2005 | ⊜97 | NOTICE of Hearing: Telephonic Final Pretrial Conference re-set for 8/29/2005 02:00 PM before Chief Judge Rudolph T Randa. (cc: all counsel via US Mail)(Zik, Linda) |
| 08/09/2005 | ⊜98 | Rule 7.4 expedited non-dispositive MOTION to Adjourn by World Wrestling Entertainment Inc, Good Humor Corp. (Attachments: # 1 Cover Letter)(jld, ) (Entered: 08/10/2005) |
| 08/22/2005 | ⊜99 | ORDER signed by Judge Rudolph T Randa on August 22, 2005 granting 98 Motion to Adjourn. The 9/12/05 trial date is adjourned and the telephonic pretrial conference set for 8/29/05 at 2:00 P.M. is converted to a telephone scheduling conference. The Court |

| | | will initiate the call. (cc: via US Mail to all counsel) (Randa, Rudolph) |
|---|---|---|
| 08/22/2005 | | (Court only) Set Deadlines/Hearings:, ***Deadlines/Hearings terminated. Telephonic Scheduling Conference set for 8/29/2005 02:00 PM before Chief Judge Rudolph T Randa. The Court will initiate the call. (Koll, Jacki) |
| 08/29/2005 | 🌐100 | ORDER signed by Judge Rudolph T Randa on August 29, 2005 granting [56] Motion to Compel, denying [56] Motion for Sanctions, granting 72 Motion for Sanctions, granting [85] Motion for Order. [See order for details and deadlines] (cc: all counsel via FAX) (Randa, Rudolph) |
| 08/29/2005 | 🌐101 | Minute Entry for proceedings held before Judge Rudolph T Randa: Telephonic Scheduling Conference held on 8/29/2005. Telephonic Final Pretrial Conference re-set for 1/30/2006 02:00 PM before Chief Judge Rudolph T Randa. 1-week Jury Trial re-set for 3/20/2006 09:00 AM in Courtroom 320 before Chief Judge Rudolph T Randa. (Randa, Rudolph) . Modified on 9/1/2005 to attach document(cms, ). (Entered: 08/31/2005) |
| 08/31/2005 | 🌐102 | AMENDED SCHEDULING ORDER: signed by Judge Rudolph T Randa on 8/31/2005.Telephonic Final Pretrial Conference re-set for 1/20/2006 02:00 PM before Chief Judge Rudolph T Randa. 1-week Jury Trial re-set for 3/20/2006 09:00 AM in Courtroom 320 before Chief Judge Rudolph T Randa. (cc: all counsel)(Randa, Rudolph) |
| 09/02/2005 | 🌐103 | SECOND AMENDED SCHEDULING ORDER: signed by Judge Rudolph T Randa on 9/2/2005 correcting date of Final Pretrial Conference. Telephonic Final Pretrial Conference set for 1/30/2006 02:00 PM before Chief Judge Rudolph T Randa. (cc: all counsel) (Randa, Rudolph) |
| 09/09/2005 | 🌐104 | REQUEST by World Wrestling Entertainment Inc for attorneys' fees and costs (cms, ) (Entered: 09/12/2005) |
| 09/09/2005 | 🌐105 | AFFIDAVIT of Curtis B. Krasik (cms, ) (Entered: 09/12/2005) |
| 09/09/2005 | 🌐106 | CERTIFICATE OF SERVICE by World Wrestling Entertainment Inc (cms, ) (Entered: 09/12/2005) |
| 09/20/2005 | 🌐107 | MOTION for Reconsideration of the Court's 8/29/05 Order, MOTION for Sanctions against defendant World Wrestling Entertainment Inc., by Albert Patterson. (jld, ) |
| 09/20/2005 | 🌐108 | BRIEF in Support re 107 MOTION for Reconsideration of the Court's 8/29/05 Order and MOTION for Sanctions, filed by Albert Patterson. (jld, ) |
| 09/26/2005 | 🌐109 | DISCOVERY FILED IN ERROR -- DOCUMENT RETURNED REQUEST by Albert Patterson to Admit to Defendant World Wrestling Entertainment, Inc. (jld, ) Modified on 9/29/2005 (jld, ). |
| 09/26/2005 | 🌐110 | FILED IN ERROR -- DOCUMENT RETURNED NOTICE of filing by Albert Patterson (jld, ) Modified on 9/29/2005 (jld, ). (Entered: 09/27/2005) |
| 09/26/2005 | 🌐111 | DISCOVERY FILED IN ERROR - DOCUMENT RETURNED EXHIBITS to plaintiff's request to admit to defendant World Wrestling Entertainment, Inc., (Volume I Exhibits 1-5) by Albert Patterson. (jld, ) Modified on 9/29/2005 (jld, ). (Entered: 09/27/2005) |
| 09/26/2005 | 🌐112 | DISCOVERY FILED IN ERROR - DOCUMENT RETURNED EXHIBITS to plaintiff's request to admit to defendant World Wrestling Entertainment, Inc. (Exhibits 6-32, Volume II) by Albert Patterson. (jld, ) Modified on 9/29/2005 (jld, ). (Entered: 09/27/2005) |

| 10/03/2005 | ⚙113 | MOTION to Bifurcate, MOTION for Order to reopen discovery, by Albert Patterson. (jld, ) |
| 10/04/2005 | ⚙114 | BRIEF in Opposition re 107 MOTION for Reconsideration MOTION for Sanctions; REPLY to plaintiff's response to petition for attorneys' fees and costs, filed by World Wrestling Entertainment Inc. (Attachments: # 1 Letter)(jld, ) |
| 10/17/2005 | ⚙115 | REPLY BRIEF in Support re [113] MOTION to Bifurcate MOTION for Order, 107 MOTION for Reconsideration MOTION for Sanctions; certificate of service, filed by Albert Patterson. (jld, ) (Entered: 10/18/2005) |
| 10/17/2005 | ⚙116 | REPLY BRIEF in Support re 107 MOTION for Sanctions ; certificate of service, filed by Albert Patterson. (jld, ) (Entered: 10/18/2005) |
| 10/17/2005 | ⚙117 | MOTION for Leave to File a sur-reply and sur-reply memorandum to defendants' reply in support of defendants' petition for fees and costs; certificate of service, by Albert Patterson. (jld, ) (Entered: 10/18/2005) |
| 10/17/2005 | ⚙118 | LETTER from Shepard A. Davis re plaintiff's 10/17/05 filings. (jld, ) (Entered: 10/18/2005) |
| 10/20/2005 | ⚙119 | BRIEF in Opposition re [113] MOTION to Bifurcate Trial; MOTION for Order to reopen discovery; certificate of service, filed by World Wrestling Entertainment Inc, Good Humor Corp. (jld, ) (Entered: 10/21/2005) |
| 10/26/2005 | ⚙120 | MOTION to Compel answers to requests to admit by Albert Patterson. (jld, ) |
| 10/26/2005 | ⚙121 | EXHIBITS (Volume I Exhibits 1-5) to plaintiff's request to admit to defendant World Wrestling Entertainment, Inc. by Albert Patterson. (jld, ) |
| 10/26/2005 | ⚙122 | EXHIBITS (Volume II Exhibits 6-32) to plaintiff's request to admit to defendant World Wrestling Entertainment, Inc., by Albert Patterson. (jld, ) |
| 11/01/2005 | ⚙123 | REPLY BRIEF in Support re [113] MOTION to Bifurcate MOTION for Order filed by Albert Patterson. (jld, ) |
| 11/03/2005 | ⚙124 | SUPPLEMENTAL Petition for attorneys' fees and costs incurred in reconvening plaintiff's deposition pursuant to August 29, 2005 Decision and Order by all defendants (jld, ) (Entered: 11/04/2005) |
| 11/03/2005 | ⚙125 | AFFIDAVIT of Curtis B. Krasik (jld, ) (Entered: 11/04/2005) |
| 11/03/2005 | ⚙126 | CERTIFICATE OF SERVICE by all defendants (Attachments: # 1 Cover Letter)(jld, ) (Entered: 11/04/2005) |
| 11/14/2005 | ⚙127 | BRIEF in Opposition re [120] MOTION for Reconsideration MOTION for Sanctions filed by World Wrestling Entertainment Inc. (Attachments: # 1 Cover Letter)(jld, ) Modified on 11/17/2005 (jld, to correct link). (Entered: 11/15/2005) |
| 11/15/2005 | ⚙128 | RESPONSE to World Wrestling Entertainment, Inc.'s supplemental petition for fees and costs, filed by Albert Patterson. (jld, ) |
| 11/21/2005 | ⚙129 | REPLY to plaintiff's response in opposition to supplemental petition for attorneys' fees and costs, filed by World Wrestling Entertainment Inc. (Attachments: # 1 Cover Letter)(jld, ) (Entered: 11/22/2005) |
| 11/29/2005 | ⚙130 | REPLY BRIEF in Support re [120] MOTION to Compel filed by Albert Patterson. (Attachments: # 1 Affidavit of Charles Drake Boutwell)(jld, ) |
| 01/10/2006 | ⚙131 | LETTER with attached documents re response to defendant's motion for summary judgment, from Charles Drake Boutwell (jld, ) (Entered: 01/11/2006) |

| 01/17/2006 | 132 | PRETRIAL REPORT by Albert Patterson. (AVAILABLE IN PAPER FORMAT)(cms, ) (Entered: 01/18/2006) |
| 01/19/2006 | 133 | RESPONSE to plaintiff's 1/9/06 letter filed by World Wrestling Entertainment Inc, Good Humor Corp. (cms, ) (Entered: 01/20/2006) |
| 01/25/2006 | 134 | PRETRIAL REPORT; attachments; certificate of service, by defendants. (paper format)(jld, ) (Entered: 01/26/2006) |
| 01/31/2006 | 135 | ORDER signed by Judge Rudolph T Randa on January 31, 2006 granting [76] Motion for Summary Judgment. The matter will proceed on the defendants' counterclaims against Patterson. (cc: all counsel; via US Mail to Charles Coutwell, Curtis B Krasik, Jerry S McDevitt, Julie R Fenstermaker, Shepard A Davis) (Randa, Rudolph) |
| 02/07/2006 | 136 | Minute Entry for proceedings held before Judge Rudolph T Randa: Telephonic Final Pretrial Conference held on 2/7/2006. Defendants request a ruling on their petition for fees prior to trial. Trial is set for 3/20/06 and is now estimated at 6-days. Plaintiff to submit a proposed special verdict form by 2/28/06. Motions in limine due by 2/17/06; responses due 2/27/06. (Randa, Rudolph) |
| 02/14/2006 | 137 | MOTION for Reconsideration of 1/31/06 Decision and Order, by Albert Patterson. (Attachments: # 1 attachments)(jld, ) (Entered: 02/15/2006) |
| 02/16/2006 | 138 | MOTION in Limine to bar testimony by Julio Del Cioppo and Gary A. Essmann, by Albert Patterson. (jld, ) (Entered: 02/17/2006) |
| 02/16/2006 | 139 | MOTION in Limine to bar reference to the fact that Patterson did not file federal and state income tax returns, by Albert Patterson. (jld, ) (Entered: 02/17/2006) |
| 02/21/2006 | 140 | RESPONSE to Motion re 137 MOTION for Reconsideration ; certificate of service, filed by World Wrestling Entertainment Inc, Good Humor Corp. (Attachments: # 1 cover letter)(jld, ) (Entered: 02/22/2006) |
| 02/23/2006 | 141 | MOTION to Voluntarily Withdraw counterclaims without prejudice, by World Wrestling Entertainment Inc, Good Humor Corp. (Attachments: # 1 Cover Letter)(jld, ) (Entered: 02/24/2006) |
| 02/24/2006 | 142 | RESPONSE to Motion re 139 MOTION in Limine, 138 MOTION in Limine filed by World Wrestling Entertainment Inc, Good Humor Corp. (Attachments: # 1 Cover Letter)(jld, ) |
| 02/28/2006 | 143 | LETTER from the Court to Counsel removing the 3/20/06 Jury trial from its calendar. (cc: All Counsel via US Mail) (Zik, Linda) |
| 02/28/2006 | 144 | PROPOSED revised jury instructions and trial exhibits, filed by Albert Patterson. (paper format) (jld, ) |
| 02/28/2006 | | (Court only) ***Deadlines/Hearings terminated. 3/20/2006 Jury trial cancelled. (Zik, Linda) |
| 03/02/2006 | 145 | REPLY BRIEF in Support re 139 MOTION in Limine, 138 MOTION in Limine filed by Albert Patterson. (jld, ) |
| 03/06/2006 | 146 | REPLY BRIEF in Support re 137 MOTION for Reconsideration of the 1/31/06 Decision and Order, filed by Albert Patterson. (Attachments: # 1 Exhibit R-6)(jld, ) |
| 03/16/2006 | 147 | REPLY BRIEF in Support re 141 MOTION to Withdraw counterclaims without prejudice, filed by World Wrestling Entertainment Inc, Good Humor Corp. (Attachments: # 1 Cover Letter)(jld, ) |

| | | |
|---|---|---|
| 03/27/2006 | ❸148 | MOTION to Strike World Wrestling Entertainment's reply in further support of motion to withdraw counterclaims without prejudice; certificate of service, by Albert Patterson. (jld, ) |
| 03/30/2006 | ❸149 | RESPONSE to Motion re 148 MOTION to Strike reply in further support of motion to withdraw counterclaims without prejudice, filed by World Wrestling Entertainment Inc. (Attachments: # 1 Cover Letter)(jld, ) |
| 08/21/2006 | ❸150 | ORDER signed by Judge Rudolph T Randa on August 21, 2006 denying 107 Motion for Reconsideration, denying 107 Motion for Sanctions, denying [113] Motion to Bifurcate, denying [113] Motion for Order, denying 117 Motion for Leave to File, denying [120] Motion to Compel, denying 137 Motion for Reconsideration, finding as moot 138 Motion in Limine, finding as moot 139 Motion in Limine, granting 141 Motion to Withdraw, granting 148 Motion to Strike. The Defendants' petition for attorney's fees and costs 104 is GRANTED in the amount of $41,210.56 and DENIED in all other respects. Patterson SHALL pay such amount to the Defendants no later than September 5, 2006. The Defendants' supplemental petition for attorney's fees and costs 124 is GRANTED in the amount of $10,097.91. Patterson SHALL pay such amount to the Defendants no later than September 5, 2006. This action is DISISSED. (cc: all counsel) (Randa, Rudolph) |
| 08/21/2006 | ❸151 | JUDGMENT signed by Deputy Clerk, approved as to form by Judge Rudolph T Randa on August 21, 2006. (cc: all counsel)(Randa, Rudolph) |
| 08/21/2006 | | (Court only) ***Case terminated. (vlh, ) (Entered: 08/22/2006) |
| 09/20/2006 | ❸152 | NOTICE OF APPEAL from 1/30/06 135 Order & 8/21/06 150 Order by Albert Patterson. $455.00 appeal fee paid, receipt no. 102 120358. (cc: all counsel) (vlh) |